# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Cheshire Superior Court
33 Winter Street, Suite 2
Keene NH  03431

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

# SUMMONS IN A CIVIL ACTION

**Case Name:**  **Patrick Short, et al v Amerada Hess Corporation, et al**
**Case Number:**  **213-2016-CV-00077**

Date Complaint Filed: April 11, 2016

A Complaint has been filed against Amerada Hess Corporation; Richard Cartier; Cheveron U.S.A., Inc.; Chevron Texaco Corporation; Citgo Petroleum Corporation; ConocoPhillips Company; Faham B Effendi; Shagufta N Effendi; Exxon Mobile Corporation; Exxon Mobile Oil Corporation; Joseph Hart; Peterborough Oil Company, Inc.; Shri Ganech Corp. c/o Dharnem Patel in this Court. A copy of the Complaint is attached.

**The Court ORDERS that ON OR BEFORE:**

| | |
|---|---|
| May 27, 2016 | Joseph Arsenault; Darren Bashaw; David Bashaw, Jr.; Marion Bedard; Armond J Bedard; Julie Bedard; Teresa Chandler; Tammy Demond; Kelly Denis; Anastasia Drouin; Christine House; Robert B Laclair; Connie Merrill; Nicole Cote f/b/o Stephanie Cote; Gale W Shelley; Patrick Short; Karen Smith; Robert Symonds; Jillian Woods shall have this Summons and the attached Complaint served upon Amerada Hess Corporation; Richard Cartier; Cheveron U.S.A., Inc.; Chevron Texaco Corporation; Citgo Petroleum Corporation; ConocoPhillips Company; Faham B Effendi; Shagufta N Effendi; Exxon Mobile Corporation; Exxon Mobile Oil Corporation; Joseph Hart; Peterborough Oil Company, Inc.; Shri Ganech Corp. c/o Dharnem Patel by in hand or by leaving a copy at his/her abode, or by such other service as is allowed by law. |
| June 17, 2016 | Joseph Arsenault; Darren Bashaw; David Bashaw, Jr.; Marion Bedard; Armond J Bedard; Julie Bedard; Teresa Chandler; Tammy Demond; Kelly Denis; Anastasia Drouin; Christine House; Robert B Laclair; Connie Merrill; Nicole Cote f/b/o Stephanie Cote; Gale W Shelley; Patrick Short; Karen Smith; Robert Symonds; Jillian Woods shall file the return(s) of service with this Court. Failure to do so may result in this action being dismissed without further notice. |
| 30 days after Defendant is served | Amerada Hess Corporation; Richard Cartier; Cheveron U.S.A., Inc.; Chevron Texaco Corporation; Citgo Petroleum Corporation; ConocoPhillips Company; Faham B Effendi; Shagufta N Effendi; Exxon Mobile Corporation; Exxon Mobile Oil Corporation; Joseph Hart; Peterborough Oil Company, Inc.; Shri Ganech Corp. c/o Dharnem Patel must file an Appearance and Answer or other responsive pleading form with this Court.  A copy of the Appearance and Answer or other |

responsive pleading must be sent to the party listed below and any other party who has filed an Appearance in this matter.

**Notice to Amerada Hess Corporation; Richard Cartier; Cheveron U.S.A., Inc.; Chevron Texaco Corporation; Citgo Petroleum Corporation; ConocoPhillips Company; Faham B Effendi; Shagufta N Effendi; Exxon Mobile Corporation; Exxon Mobile Oil Corporation; Joseph Hart; Peterborough Oil Company, Inc.; Shri Ganech Corp. c/o Dharnem Patel:** If you do not comply with these requirements you will be considered in default and the Court may issue orders that affect you without your input.

Send copies to:
  Peter G McGrath, ESQ

McGrath Law Firm
20 Montgomery Street
Concord NH  03301

BY ORDER OF THE COURT

April 12, 2016

James I. Peale
Clerk of Court

(555)

## THE STATE OF NEW HAMPSHIRE

CHESHIRE COUNTY                                        SUPERIOR COURT

Patrick Short; Nicole Cote f/b/o Stephanie Cote; Tammy Desmond; Marion Bedard; Armond
Bedard; Julie Bedard; Gale Shelley; Anastasia Drouin; David Basha Jr.; Darren Bashaw; Robert
Symonds; Connie Merrill; Teresa Chandler; Jillian Woods; Kelly Denis; Joseph Arsenault;
Robert LeClair; Christine House; and Karen Smtih

### PLAINTIFFS

### V.

Amerada Hess Corporation
and
Chevron Texaco Corporation
and
Chevron U.S.A., Inc.
and
Citgo Petroleum Corporation
and
Conoco Phillips Company
and
Shri Ganech Corp c/o Dharnem Patel
and
Faham and Shagugta Effendi
and
Joseph Hart
and
Richard Cartier
and
Peterborough Oil Company
and
Lyondell Chemical Company
and
Exxon Mobile Corporatoin
and
Exxon Mobile Oil Corporation

### DEFENDANTS

### COMPLAINT

NOW COME Plaintiffs, by and through counsel, McGrath Law Firm, PA and file this

Complaint, stating as follows:

)                                    )

## SUMMARY OF THE CASE

1.      Defendants' use of MTBE in gasoline has created an unprecedented threat to both the surface and Plaintiffs' drinking water and persons.  Unlike other gasoline constituents, MTBE contaminates and spreads in water resources quickly, and hides and resists removal and treatment, thereby presenting a serious threat to waters throughout the State.  MTBE has contaminated numerous drinking water sources of the Plaintiffs, as a result of normal and foreseen storage, purchase and use of gasoline by its residents.

2.      MTBE can cause significant adverse health effects, and, even at very low concentrations, can render drinking water foul, putrid and unfit for human consumption.  MTBE contamination damaged the Plaintiffs' water supply and diminished the Plaintiffs' property values.

3.      The defendants in this action are major oil and chemical companies that manufacture MTBE and supply gasoline containing MTBE to the Swanzey facility.  The defendants include MTBE manufacturers and refiners and major-brand marketers of gasoline containing MTBE, which was entered and continues to entered into the stream of the State's commerce and which has damaged and continues to damage the Plaintiffs property and persons, and also gasoline station owners that owned the station involved.

4.      In addition to producing and/or supplying MTBE or gasoline containing MTBE for importation into and sale at the West Swanzey, New Hampshire location, defendants knowingly and willfully promoted, marketed and sold MTBE and gasoline and other petroleum products (hereinafter collectively, "gasoline") containing MTBE, when they knew or reasonably should have known that MTBE would be released into the environment and pollute the Plaintiffs' water supply in violation of New Hampshire law and threaten Plaintiffs' health and welfare and the environment, and damage Plaintiffs property.

2

5.      The Plaintiffs allege that under New Hampshire law defendants are: strictly liable for manufacturing and supplying a defective product and failing to provide adequate warnings in connection therewith; liable for creating a public nuisance; strictly liable for directly or indirectly causing or suffering the discharge of MTBE into the Plaintiffs' property; liable for trespass and nuisance upon the Plaintiffs; liable for negligently causing damage to the Plaintiffs; liable for unfair and deceptive business acts; and liable for all resulting damages, including all costs to investigate, monitor, prevent, abate, contain and remove any contamination or threatened contamination from MTBE and to restore and protect Plaintiffs' property.   The Plaintiffs also allege that certain defendants are liable for enhanced damages to reflect the aggravating circumstances caused by such defendants' wanton, malicious and oppressive conduct.  Finally, the State alleges that defendants are liable for civil penalties under State environmental and consumer protection laws.

6.      Defendants sold and delivered gasoline to the West Swanzey station.

## PLAINTIFFS

7.      Plaintiffs bring this action to seek damages for the contaminated water supply, personal injury and diminution in property value.

8.      Patrick Short ("Plaintiff")  is a citizen and resident of New Hampshire.

9.      Nicol Cote f/b/o Stephanie Cotes ("Plaintiff") is a citizen and resident of New Hampshire.

10.     Tanmy Desmond ("Plaintiff") is a citizen and resident of New Hampshire.

11.     Marion Bedard ("Plaintiff") is a citizen and resident of New Hampshire.

12.     Armond Bedard ("Plaintiff") is a citizen and resident of New Hampshire.

13.     Julie Bedard ("Plaintiff") is a citizen and resident of Maine.

3

14.     Gale Shelley ("Plaintiff") is a citizen and resident of New Hampshire.

15.     Anastasia Drouin ("Plaintiff") is a citizen and resident of Oregon.

16.     David Bashaw, Jr. ("Plaintiff") is a citizen and resident of New Hampshire.

17.     Darren Bashaaw ("Plaintiff") is a citizen and resident of New Hampshire.

18.     Robert Symonds ("Plaintiff") is a citizen and resident of New Hampshire.

19.     Connie Merrill ("Plaintiff") is a citizen and resident of New Hampshire.

20.     Teresa Chandler ("Plaintiff") is a citizen and resident of New Hampshire.

21.     Jillian Woods ("Plaintiff") is a citizen and resident of New Hampshire.

22.     Kelly Denis ("Plaintiff") is a citizen and resident of New Hampshire.

23.     Joseph Arsenault ("Plaintiff") is a citizen and resident of New Hampshire.

24.     Robert LaClair ("Plaintiff") is a citizen and resident of New Hampshire.

25.     Christine House ("Plaintiff") is a citizen and resident of New Hampshire.

26.     Karen Smith ("Plaintiff") is a citizen and resident of New Hampshire.

## DEFENDANTS

27.     The defendants in this action are petroleum-related corporations doing business in New Hampshire.  The three categories of defendants are: (1) the refiners and major-brand marketers of gasoline containing MTBE; and (2) the manufacturers and promoters of MTBE that contaminates and threatens the waters of the State; and (3) owners of the gasoline station involved in West Swanzey, New Hampshire.

### A.     Refiner/Marketer/Retail Defendants

28.     The following defendants, at all times relevant to this action, refined, marketed and/or otherwise supplied (directly or indirectly) gasoline containing MTBE that each such

4

defendant knew or should have known would be delivered into the State (or areas affecting the waters of the State):

   (a)   Amerada Hess Corporation ("Hess") is a Delaware corporation with its principal place of business at 1185 Avenue of the Americas, New York, New York, doing business and registered to transact business in New Hampshire.  Hess sold gasoline in West Swanzey during the period when the MTBE contaminated the water supply in West Swanzey.

   (b)   ChevronTexaco Corporation ("ChevronTexaco") is a Delaware corporation with its principal place of business at 6001 Bollinger Road, San Ramon, California, doing business in New Hampshire.  On Information and belief, the State alleges that ChevronTexaco was formed as a result of a merger in 2001 of Chevron Corporation and Texaco, Inc. On information and belief, the State further alleges that ChevronTexaco owns and/or controls defendant Chevron U.S.A., Inc.

   (c)   Chevron U.S.A., Inc. (Chevron U.S.A.") is a Pennsylvania corporation with its principal place of business at 6001 Bollinger Road, San Ramon, California, doing business and registered to transact business in New Hampshire.  The term "Chevron" as used in this Writ refers to ChevronTexaco and/or Chevron U.S.A.

   (d)   Citgo Petroleum Corporation ("Citgo") is a Delaware corporation with its principal place of business at 6100 South Yale Avenue, Tulsa, Oklahoma, doing business and registered to transact business in New Hampshire.

(e)     ConocoPhillips Company ("ConocoPhillips") is a Delaware corporation with its principal place of business at 600 North Dairy Ashford, Houston, Texas, doing business and registered to transact business in New Hampshire.  On information and belief, the State further alleges that ConocoPhillips is the successor corporation to Conoco, Inc. And Phillips Petroleum Company.  The State is further informed and believed that ConocoPhillips is the successor corporation to Tosco Corporation, including its subsidiary Tosco Refining LP, which was acquired by Phillips Petroleum Company in 2001.

(f)     Shri Ganech Corp c/o Dharnem Patel is a corporation with its principal office located at 7 Buckingham Court, Delran, New Jersey, and owner of 968 West Swanzey Road, Swanzey, NH, currently operated as the Rt 10 Mini Mart, (hereinafter known as "gas station").

(g)     Faham and Shagugta Effendi formerly operated and owned the gas station and property of gas station from 1999 - 2008, when purchased by Shri Ganech Corp.

(h)     Joseph Hart is the former owner of the property of the gas station from 1988 - 1999, and was a Director and Shareholder in Peterborough Oil Co., Inc., which operated and controlled the gas station from 1988 - 1999, and resides at 36 Whittier Street, Andover, MA and maintains an office at 665 N. Main St. Leominster, MA 01453.

(i)     Richard Cartier is the former owner of the property of the gas station from

6

1988 - 1999, and was a Director and Shareholder in Peterborough Oil Co., Inc., which operated and controlled the gas station from 1988 - 1999, and resides at 18 Heald Road, Ashburnham, MA and maintains an office at 665 N. Main St. Leominster, MA 01453.

(j)     Peterborough Oil Company, Inc.  operated the gas station located at 968 West Swanzey Road until it was purchased in 2008 by Shri Ganech Corp., having a last know business address at 665 N. Main St. Leominster, MA 01453.

(k)     Exxon Mobile Corporation is a New Jersey Corporation with its principle place of business at 5959 Las Colinas Boulevard, Irving, Texas doing business and registered to transact business in New Hampshire.

(l)     Exxon Mobile Oil Corporation is a New Jersey Corporation with its principle place of business at 5959 Las Colinas Boulevard, Irving, Texas doing business and registered to transact business in New Hampshire.

The defendants identified in paragraphs (a) through (l) above will be collectively referred to as the "refiner/marketer/retail defendants." The refiner/marketer/retail defendants, and each of them, among other things: (a) designed, manufacturer, formulated, refined, set specifications for, exchanged, promoted, marketed and/or otherwise supplied (directly or indirectly) gasoline containing MTBE that was delivered to the gas station such that releases of MTBE contaminate and threatened the Plaintiffs' water supply; (b) were legally responsible for and committed each of the multiple tortious and ongoing wrongful acts alleged in this Writ; (c) participated in one of

7

more enterprises to promote MTBE and/or gasoline containing MTBE, despite the availability of reasonable alternatives and their actual or constructive knowledge that the pollution alleged herein would be the inevitable result of their conduct; and (d) in doing the tortious and wrongful acts alleged in this Writ, acted in the capacity of joint-venturer, partner, agent, principal, successor-in-interest, surviving corporation, fraudulent transferee, fraudulent transferor, controller, alter-ego, co-conspirator, licensee, licensor, patent holder and/or indemnitor of each of the named defendants.

29.     Lyondell Chemical Company will be referred to as the "manufacturer defendant." The manufacturer defendant, among other things: (a) designed, manufactured, formulated, promoted, marketed, distributed, exchanged an/or sold MTBE that contaminates and threatens the Plaintiffs' water supply; (b) is legally responsible for and committed each of the multiple tortious and ongoing wrongful acts alleged in this Writ; (c) participated in one or more enterprises to promote MTBE and/or gasoline containing MTBE, despite the availability of reasonable alternatives and its actual or constructive knowledge that the pollution alleged herein would be the inevitable result of its conduct; and (d) in doing the tortious and wrongful acts alleged in this Writ, acted in the capacity of joint-venturer, partner, agent, principal, successor-in-interest, surviving corporation, fraudulent transferee, fraudulent transferor, controller, alter-ego, co-conspirator, licensee, licensor, patent holder and/or indemnitor of each of the named defendants.

30.     The refiner/marketer defendants and manufacturer defendant are referred to collectively herein as "defendants."  The "gas station owner defendants" are referred to as such throughout this Writ.

31.     Among other things, the defendants knew, or reasonably should have known, that: (A) the gasoline distribution and retail system at this location contained leaking gasoline storage and delivery systems; (b) MTBE is more readily released from gasoline storage and delivery systems than the constituents of conventional gasoline; and © releases of MTBE into the environment would be an inevitable consequence of placing MTBE into the stream of commerce in the absence of precautionary measurers to prevent or mitigate such releases – measures that the defendants failed to take.  (Gas station owner defendants failed to protect the public and are liable for all acts of other defendants).

32.     The defendants also knew, or reasonably should have known, that, unlike the constituents of conventional gasoline, MTBE, when released into the environment, would move great distances, mix easily with groundwater, resist biodegradation, render Plaintiffs drinking water unsafe and/or non-potable, and require significant expenses to find and remove from Plaintiffs' drinking water supplied.

33.     The defendants further knew, or reasonably should have known, that various consumer and commercial activities, such as use of snowmobiles, motorized watercraft and lawnmowers and operation of junkyards and vehicle maintenance and repair facilities, would result in releases of MTBE into Plaintiffs' drinking water at and around West Swanzey, New Hampshire..

34.     Despite knowing the devastating risk of drinking water contamination posed by MTBE, and despite the availability of reasonable alternatives, the defendants failed to warn customer, retailers, regulators or public officials, including the State of New Hampshire, and failed to take any other precautionary measures to prevent or mitigate such contamination.

Instead, defendants promoted MTBE, and gasoline containing MTBE, as environmentally sound product appropriate for widespread use. Moreover, certain defendants engaged in separate and joint activities to suppress, conceal and/or discredit studies and other information regarding the hazards of MTBE. Defendants' wrongful conduct, among other things, encouraged the State to participate in the federal reformulated gasoline program without a full understanding of the risks to the State's water resources, which resulted in: (a) a dramatic increase in the use and presence of gasoline containing MTBE in the Plaintiffs drinking water; (b) the consequent injuries to the water of the Plaintiffs; and (c) the substantial damages incurred by the Plaintiffs in response thereto.

35. To the extent any act or omissions of any of the defendants is alleged in this Writ, the officers, directors, agents, employees or representatives of each such defendant committed or authorized each such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of such defendants, and did so while acting within the scope of their duties, employment or agency.

## JURISDICTION AND VENUE

36. Venue is proper in Cheshire County as the acts involved herein were committed in West Swanzey, Cheshire County.

## FACTUAL ALLEGATIONS

A. **The Contaminant MTBE**

37. MTBE is a chemical compound produced from methanol and isobutylene. It is used by some refiners in some gasoline. As used in this Writ, MTBE consists not only of methyl

10

tertiary butyl ether, but also the degradation byproducts of an contaminants in commercial grade MTBE, including but not limited to tertiary butyl alcohol.

38.     One way that MTBE contaminates the environment is through releases, leaks, overfills, and spills from gasoline delivery facilities, including, but not limited to gasoline stations, gasoline storage, transfer, delivery, and dispensing systems ("gasoline delivery systems").  Suche leaks, overfills and spills occurred in West Swanzey, New Hampshire.

39.     Another way that MTBE contaminates the environment is through releases, leaks, overfills, and spills of gasoline associated with or incident to certain consumer activities, including but not limited to the use of lawnmowers, snowmobiles, and motorized watercraft, and certain commercial activities, including but not limited to the operation of junkyards and vehicle repair and maintenance facilities.  These types of leaks and spills occurred in West Swanzey.

40.     As a result of its physical characteristics, MTBE finds unique pathways for release into the environment from gasoline delivery systems and is more readily released from such systems than conventional gasoline components.

41.     Once released to the environment, MTBE's unique characteristics cause extensive environmental contamination and a corresponding threat to the public health and welfare beyond that caused by gasoline that does not contain MTBE.  In particular, the fate and transport of MTBE in the subsurface differs significantly from that of gasoline constituents that have historically been of environmental and/or toxicological concern, specifically the "BTEX compounds" (Benzene, toluene, ethyl benzene, and zylene).

42.     When releases into the environment, MTBE separates from other gasoline constituents in the presence of moisture.  In contrast to the BTEX compounds, MTBE has a

strong affinity for water, is easily dissolved and does not readily adhere to soil particles, making it more mobile and able to penetrate great distances from the source of the release.

43.     In groundwater, MTBE moves freely at approximately the rate of the water's movement, unlike BTEX compounds, which tend to adhere to soil and float on the surface of water.  This makes it more difficult to find and more difficult to remove or treat than BTEX compounds.

44.     MTBE is also more persistent than BTEX compounds because it does not readily biodegrade in groundwater.  As a result, MTBE is relatively more difficult and expensive to remove from groundwater.

45.     In sum, when MTBE is released into the environment, it migrates farther and faster through soil and groundwater, penetrates deeply into aquifers, resists biodegradation and results in persistent contamination that is more costly to address.  As a result of these properties, MTBE has contaminated, and continues to contaminate and threaten Plaintiffs' water supply.

46.     MTBE also contaminates surface waters through releases, leaks, overfills and spills of gasoline associated with or incident to certain consumer and commercial activities, including but not limited to the use of snowmobiles and motorized watercraft.

47.     Contamination of the Plaintiffs water supply with MTBE has damaged and continues to damage and threaten these precious resources, and threatens the health, safety and welfare of the Plaintiffs.

48.     Federal and other studies link MTBE to a variety of adverse health effects.

49.     The State has established a health-based Primary Maximum Contaminant Level ("MCL") for MTBE of 13 parts per billion ("ppb").  This is one of the most stringent standards in

the nation.  Many test results show excess levels in Plaintiffs' water supply.

50.    The establishment of the health-based MCL for MTBE triggers certain state regulatory requirements if that level is exceeded in drinking water supplies.  Such state requirements include, but are not limited to, required investigatory and remedial action to protect public health and the environment and remedial actions by public water suppliers.

51.    In addition to the health and environmental risks posed by MTBE in drinking water supplies, MTBE can render water supplies undrinkable by changing the taste and odor of water in such a manner that it becomes a foul smelling liquid with a turpentine odor and a chemical taste unfit for human consumption.  Many individuals can smell and/or taste MTBE in drinking water at levels well below the health-based MCL of 13 ppb.  Several Plaintiffs have found their water supply to "stink".  Plaintiffs have used the water for drinking water and for bathing and showering and household water needs for many years.

**B.    History of MTBE in the State**

52.    Oil companies began blending MTBE into gasoline in the late 1970's.  Initially used as an octane enhancer, MTBE was used throughout the 1980's at low concentrations in some gasoline by some refiners, primarily in high-octane grades.

53.    In or about the late 1970's the U.S. Environmental Protection Agency ("EPA") registered MTBE as a fuel additive that does not cause or contribute to the failure of any emission control device or system, pursuant to section 211 of the Clean Air Act, 42 U.S.C. § 7545.  Such registration did not and does not constitute endorsement, certification, or approval of MTBE as fuel additive by any agency of the United States.

54.    Refiners, including defendants, significantly increased their use of MTBE in

13

gasoline after 1990.  In 1990, Congress established the Reformulated Gasoline Program ("RFG Program") in section 211(k) of the Clean Air Act, 42 U.S.C. § 7545(k).  The RFD Program requires the use of reformulated gasoline in certain metropolitan areas with the most severe summertime ozone ("smog") levels, none of which is located in New Hampshire.  The RFG Program also allows states with other, less serious, ozone non-attainment areas to opt into the program as a means to address their non-attainment.

55.     Unlike conventional gasoline, reformulated gasoline under the RFG Program must contain a specified chemical oxygen content.  The RFG Program requires that reformulated gasoline sold in areas subject o the RFG Program consist of approximately 2.0% oxygen by weight.

56.     The RFD Program is both fuel neutral and oxygenate neutral, in that it does not mandate the use of MTBE or any particular oxygenate.  Rather, it leaves the decision on how to meet the oxygen requirements to individual refiners, including defendants.  Alternative oxygenates other than MTBE have, at all relevant times, been available to defendants.

57.     New Hampshire sought to "opt in" four of its counties to the federal RFG Program as a means to address air quality problems in those counties.  In particular, on October 22, 1991, the State submitted an application to EPA seeking to opt in to the RFG Program the four southern counties of Merrimack, Hillsborough, Rockingham and Strafford, effective January 1, 1995.  EPA approved the State's application on December 23, 1991.

58.     At the time that New Hampshire opted into the federal RFG program, it had no control over which oxygenate would be added to gasoline supplied to New Hampshire.

59.     At the time that New Hampshire chose to opt into the RFG Program, the

defendants had not provided the State with all of the information available to them concerning the unique characteristics and hazards associated with use of MTBE as an oxygenate in gasoline. Plaintiffs were unaware that such a dangerous chemical was to contaminate their water supply.

60.    Defendants made MTBE their oxygenate of choice for reformulated gasoline manufactured for and supplied to New Hampshire.  From the date of approval of New Hampshire's opt-in of the four southern counties until the present, defendants' gasoline sold in New Hampshire has contained much greater concentrations of MTBE than before the opt-in as a result of defendants' choice to meet the RFG requirements through use of MTBE.

61.    On May 30, 2001, the State submitted a petition to EPA requesting to withdraw, or "opt out" of the RFG Program on an expedited basis, citing the significant contamination threat that MTBE poses to New Hampshire's surface and groundwater.  The State's petition is still pending before EPA.  The State has also adopted rules eliminating any requirement for a minimum oxygenate content in fuel suppled to the State.

## C.    State Regulation of MTBE

62.    The State regulates MTBE as an "oil" under oil discharge statutes, including RSA 146-A and RSA 146-C, as well as under other statutes and rules designed to protect the State's waters.

63.    MTBE contamination is associated with all transportation, storage and use of gasoline containing MTBE.

64.    The State provide funding for investigation, remediation, individual third-party damages and other activities related to MTBE contamination in the State through State-administered petroleum reimbursement funds, the Oil Discharge Cleanup Fund under RSA 146-

A, and through general funding.

65.     The Plaintiffs have incurred and will continue to incur significant costs and expenses in addressing releases of MTBE into the environment and into Plaintiffs' property. Several Plaintiffs cannot drink their water and must purchase water elsewhere.

**D.     Defendants' Promotion of MTBE and TBA.**

66.     Defendants, all of whom have promoted the use of gasoline containing MTBE for its purported environmental benefits, knew or should have known of the grave harm and threat to public health, safety and welfare and the environment represented by the proliferating use of MTBE, including (among other things): widespread pollution of groundwater with MTBE, contamination of public and private drinking water supplies by this harmful and noxious compound, the rendering of Plaintiffs' drinking water supplies unfit and unusable for consumption, and increased costs to Plaintiffs in addressing MTBE contamination of drinking water supplies.

67.     Despite knowing that pollution by MTBE was an inevitable consequence of their conduct, and despite the availability of reasonable alternatives (including, but not limited to, adequate warnings), defendants failed to warn Plaintiffs, customers, retailers, regulators or public officials,  regarding the hazards of MTBE.  As production and sales of MTBE and gasoline containing MTBE increased, defendants failed to take any reasonable, appropriate, and special precautions to ensure that gasoline containing MTBE was stored safely.  Despite knowing the risk of harm posed by MTBE, defendants also failed to warn Plaintiffs, purchasers, the public, regulators, and/or the State that without such precautions, increasing amounts of MTBE would be released into the environment and cause, among other significant adverse effects to Plaintiffs,

long-term groundwater contamination, contamination of Plaintiffs' water supplies.

68.     At all relevant times, the defendants have represented to purchasers of MTBE and/or gasoline containing MTBE, as well as to the public and government agencies, that such products were environmentally sounds and appropriate for widespread production, distributions, sale and use.  Indeed, defendants represented that gasoline containing MTBE could be handled in the same fashion as conventional gasoline, and required no special measures to protect against, respond to, or mitigate suspected releases to the subsurface.

69.     Defendants knew, or reasonably should have known, that, the gasoline distribution and retail system contained leaking gasoline delivery systems, and that the nature of such systems involved frequent spillage, leaks and overfills that allowed gasoline to enter Plaintiffs land, water supply and homes in West Swanzey, New Hampshire.

70.     Defendants knew, or reasonably should have known, that: (a) MTBE would escape from gasoline delivery systems more readily than the constituents of conventional gasoline; (b) gasoline storage facilities in the State were not designed to prevent any and all leakage of gasoline containing MTBE; and (c) the operators and users of these facilities either (I) were unaware of the special hazards posed by MTBE and the steps necessary to eliminate or mitigate those hazards or (ii) would fail to take such steps.  Defendants knew that innocent homeowners who drink well water near the gas station in West Swanzey could be injured and that their property could diminish in value.

71.     Before introducing MTBE into gasoline delivery systems, the defendants knew, or reasonably should have known, among other things, that, once released into the environment, MTBE would mix easily with groundwater, move great distances, resist biodegradation, render

17

Plaintiffs' drinking water unsafe and/or non-potable, cause significant expenses to remove from Plaintiffs' drinking water supplies and otherwise damage and threaten Plaintiffs' safety and welfare and the environment.

72.     Defendants further exacerbated the situation by continued unreasonable and negligent acts, including providing gasoline containing MTBE to gasoline stations without either providing appropriate warnings or taking other precautions adequate to prevent or mitigate releases of MTBE to the subsurface. Defendants did so despite the fact that they knew, or reasonably should have known, that releases of MTBE were substantially certain to occur, because a substantial percentage of those gasoline stations would and, in fact, did: (a) place the gasoline into inadequate and leaking gasoline delivery systems; (b) suffer the routine spillage of appreciable quantities of gasoline containing MTBE in connection withe the filling of storage tanks and the use of gasoline dispensing systems; © fail to take adequate measures to monitor, detect, and respond toe releases of MTBE to soil, surface water and/or groundwater; and (d) fail to take adequate precautions to investigate, contain and clean up releases of MTBE, all in West Swanzey, New Hampshire..

73.     The widespread problems of gasoline spillage and leaking gasoline delivery systems were well known to the defendants prior to the introduction of MTBE into the State. At least as early as the mid-1960's, defendants knew, or reasonably should have known, that gasoline delivery systems generally suffer significant and widespread leaks and failures, and release gasoline products into the environment, including into groundwater. Plaintiffs are 19 homeowners near the Swanzey gasoling station they are listed by initials only.

74.     Defendants Hess, Citgo, Chevron, ConocoPhillips, El Paso, ExxonMobil, Gulf,

Irving, Shell, Sunoco, Texaco, Unocal and Valero not only knew about the widespread problems of leaking gasoline delivery systems generally, but, at all times relevant to this action, had first-hand knowledge and experience regarding leaking gasoline delivery systems and releases of MTBE to groundwater therefrom. These defendants obtained such first-hand knowledge and experience because each of them owned and operated the Swanzey gasoline station with leaking gasoline delivery systems and/or exercised control over such gasoline stations through a variety of means, including but not limited to written agreements, inspection rights, prescribing certain procedures and operating practices, prescribing specification for products, condition on sale of branded goods, agreements obligating such stations to acquire, store and sell gasoline containing MTBE, and training. Despite their first-hand knowledge that contamination of Plaintiffs water supply with MTBE was the inevitable result of their conduct, these defendants continued to refine, market, promote, and supply gasoline containing MTBE.

75.     The manufacturers, refiners and suppliers of MTBE and gasoline containing MTBE had a duty and breached their duty to evaluate and test MTBE adequately and thoroughly to determine its environmental fate and transport characteristics and potential human health and environmental impacts to Plaintiffs before they produced and sold MTBE and gasoline containing MTBE.

76.     The manufacturers, refiners and suppliers of MTBE and gasoline containing MTBE had a duty and breached their duty to Plaintiffs to evaluate and test MTBE adequately and thoroughly to determine its environmental fate and transport characteristics and potential human health and environmental impacts before they produced and sold MTBE and gasoline containing MTBE. They also had a duty and breached their duty to minimize the environmental harm

19

caused by MTBE and/or gasoline containing MTBE.  Furthermore, they had a duty and breached

their duty to take precautions, including warnings, necessary to ensure that gasoline containing

MTBE was properly stored and that all necessary measurers to promptly detect, contain, abate

and respond to spills and leaks were instituted.  Nonetheless, defendant, and each of them, failed

to adequately evaluate, test, store, warn, mitigate or otherwise ensure that gasoline containing

MTBE would not contaminate Plaintiffs' water supply.  As a direct, indirect and proximate result

of these failures, MTBE was released, and continues to be released, into the environment,

causing and threatening to cause contamination to Plaintiffs' water supply, persons and property.

      77.     In addition to the negligent and/or reckless conduct alleged herein, Defendants

Hess, Citgo, Chevron, ConocoPhillips, ExxonMobil, Gulf, Lyondell, Shell, Sunoco, Texaco,

Unocal and Valero also intentionally failed to warn Plaintiffs and others, the public and

government officials, as to the threat caused by MTBE and, by agreement and tacit understanding

among them, each knowingly pursued or took an active part in a common plan, design and

conspiracy to market and promote a product they knew to be dangerous to the environment and

damaging to Plaintiffs.  In particular, the defendants identified in this paragraph formed and

participated in joint task-forces, committees and trade associations for the specific purpose of

suppressing, concealing and minimizing information regarding MTBE hazards.  These

defendants also engaged in separate and joint activity to mislead government agencies, including

the State, as well as the Plaintiffs and others regarding these same dangers.  Such defendants'

common plan, design and conspiracy, and the acts taken in furtherance of such common plan,

design and conspiracy, are a direct, indirect and proximate cause of the MTBE contamination of

the waters of the State.

E.    **Impact of MTBE on Plaintiffs**

78.    MTBE has been found in Plaintiffs water supplies in varying amounts and at varying times.  As of 2002, MTBE was present in 13.2% of public water supplies that were tested.

79.    At all times relevant to this action:

(a)    The manufacturer defendant manufactured, promoted and supplied MTBE to refiners, including certain refiner/marketer defendants, for use as a component of gasoline.

(b)    The refiner/marketer defendants, and each of them, refined, marketed and/or otherwise supplied (directly or indirectly) gasoline containing MTBE that was delivered to commercial as to retail gasoline stations in West Swanzey.  Such supplies and deliveries of gasoline containing MTBE to such users in West Swanzey occurred over time and continue to occur.

(c)    Gasoline containing MTBE was released and continues to be released to the subsurface from retail gasoline facilities, from other commercial and consumer uses, and from other sources at locations throughout the State and/or in areas affecting Plaintiffs' water supply.  Such release of gasoline containing MTBE have occurred over time and are still occurring, all in varying amounts at different locations.

(d)    Gasoline containing MTBE was released and continues to be released to Plaintiffs water supply through normal consumer usage, including use of

21

motorized watercraft, snowmobiles and other sources. Such releases of gasoline containing MTBE have occurred over time and are still occurring, all in varying amounts at different locations, causing and threatening to cause contamination and substantial and continuing damage to the Plaintiffs property, including drinking water, causing damage to the Plaintiffs at such times and in amounts within the jurisdictional limits of this Court.

80.    MTBE is a fungible product. Once released into the environment, MTBE lacks characteristics or a chemical signature that would enable identification of the refinery or company that manufactured the product. Even when a source of a plume of MTBE – such as a leaking underground storage tank – is identified, the identity of the manufacturer of the MTBE and refiner of the offending gasoline frequently cannot be determined due to the refiner/marketer defendants' practice of trading, bartering, or otherwise exchanging their product with each other, as well as the chemical characteristics of MTBE.

81.    Defendants, and each of them, are jointly and severally liable for the costs and damages alleged herein.

82.    The injuries to the Plaintiffs caused and/or threatened by Defendants' conduct as alleged herein constitute an unreasonable interference with Plaintiffs' property. Such injuries also constitute damages to limited, precious and invaluable resources, cause diminution in value, and costly expenses to remediate.

**Swanzey Contamination**

83.    That on or about May 31, 1990, gasoline contamination was discovered in two

22

catch basins located at Route 10, adjacent to 968 West Swanzey Road operated a gas station and mini mart. Approximately 14" of water/gasoline was observed in the catch basin adjacent to the site, another catch basin across Route 10 was also impacted. Investigation was conducted by NH DES and the incident led to a request for further testing and the subsequent removal of three UST's from the site. A "Soil and Groundwater Contamination Investigation Request" was issued to Peterborough Oil Company by the DES on June 12, 1990.

84.    Elevated levels of petroleum related volatile organic compounds were detected in local wells and local water sources which contained MTBE. Thereafter, approximately 440 tons (21 dump trucks) extracted contaminated soil around the subject gas station and the DES conducted various tests throughout the area and came up with levels as high as 85 part per billion of MTBE in the water source. To contain the gasoline and the MTBE DES has recently taken action to provide fresh water to the West Swanzey area.

85.    As a result of the consumption of the contaminated MTBE water, over a period of time there have been many reported cases of cancer, rashes, tumors, autism, and other health problems in humans and animals, amongst other things of Plaintiffs and other residents that were in close proximity of the gas station.

86.    That the contamination continued and continues to flow through the wells and water sources on the properties of the aforenamed Plaintiffs. The aforenamed Plaintiffs had and still drink, bathe, and clean with the water which is contaminated. It was reported by DES on or about April 7, 2016 that the estimated cost to help remediate MTBE in West Swanzey and provide uncontaminated water to the residents will be approximately $980,000. The damages suffered by the Plaintiffs to date, and continuing, include personal injury, diminution of property

23

value, medical expenses, loss of life, and the cost of providing fresh water and remediating contaminated water supply, among other damages within the jurisdictional limits of this Court.

## COUNT I

### (Strict Product Liability Based on Defective Design Against All Defendants)

87.    The Plaintiffs reallege paragraphs 1 through 86 above and by this reference incorporates them as though set forth in full.

88.    The manufacturer defendant designed, manufactured, formulated, promoted, marketed, distributed, exchanged and/or sold MTBE to refiners, including certain refiner/marketer defendants for use as a component of gasoline.

89.    The refiner/marketer defendants, and each of them, designed, manufactured, formulated, refined, set specifications for, exchanged, promoted, marketed and/or otherwise supplied (directly or indirectly) gasoline containing MTBE that contaminated Plaintiffs' property.

90.    Defendants, and each of them, represented, asserted, claimed and warranted that gasoline containing MTBE could be used in the same manner as gasoline not containing MTBE, and/or otherwise did not require any different or special handling or precautions.

91.    Defendants, and each of them, knew that MTBE and/or gasoline containing MTBE were to be purchased and used without inspection for defects.

92.    MTBE and/or gasoline containing MTBE are defective and unreasonably dangerous products because, among other things:

    a.    MTBE escapes more readily from gasoline delivery systems than the constituents of conventional gasoline.

    b.    MTBE causes extensive groundwater contamination, as well as surface

24

water contaminations, when used in its foreseeable and intended manner.

c.  Even at extremely low levels, MTBE renders drinking water putrid, foul, and unfit for purveying as drinking water to the public.

d.  MTBE poses significant threats to Plaintiffs personal property.

e.  Defendants failed to conduct reasonable, appropriate or adequate scientific studies to evaluate the environmental fate and transport and potential human health effects of MTBE.

f.  At all times relevant to this action, feasible alternatives to MTBE that would have eliminated the unreasonable danger posed by gasoline containing MTBE, without excessive costs or loss of product efficient, were available to defendants.

g.  Commercial grade MTBE is defectively manufactured when it contains and/or degrades into unnecessary but environmental harmful impurities such as tertiary butyl alcohol.

93.  At all times relevant to this action, MTBE and/or gasoline containing MTBE were dangerous to an extent beyond that which would be contemplated by the ordinary consumer, and/or the risk of harm to public health and welfare and the environment posed by MTBE and/or gasoline containing MTBE outweighed the cost to defendants of reducing or eliminating such risk.

94.  At all times relevant to this action, MTBE and gasoline containing MTBE were used in a manner in which they were foreseeably intended to be used and without substantial change in their condition, and as a proximate result of the defects previously described, MTBE

25

proximately caused the Plaintiffs to sustain the injuries and damages set forth in this Writ.

95.     As a direct and proximate result of defendants' acts and omissions as alleged herein, the Plaintiffs have incurred, are incurring, and will continue to incur, investigation, remediation, cleanup, restoration, removal, treatment and monitoring costs and expenses related to contamination of Plaintiffs property with MTBE, in an amount within the jurisdictional limits of this Court, for which defendants are strictly, jointly and severally liable.

96.     As a further direct and proximate result of the acts and omissions of the defendants alleged in this Writ, Plaintiffs have sustained and will sustain other substantial expenses and damages, in an amount within the jurisdictional limits of this Court, for which defendants are strictly, jointly and severally liable.

97.     Defendants Hess, Citgo, Chevron, ConocoPhillips, ExxonMobil, Gulf, Lyondell, Shell, Sunoco, Texaco, Unocal and Valero knew that it was substantially certain that their alleged acts and omissions described above would threaten Plaintiffs and cause extensive contamination of Plaintiffs' property, drinking water supplies, and property damage.  Nonetheless, the defendants identified in this paragraph intentionally failed to warn downstream handlers, the public and government officials, including the Plaintiffs, as to the threat caused by MTBE, and engaged in separate and joint activities to suppress, conceal and/or minimize information regarding MTBE hazards in order to mislead government agencies, including the State, and the public regarding such hazards.  These defendants committed each of the above-described acts and omissions knowingly, willfully, and with oppression, fraud, and/or malice and with a conscious disregard of the health and safety of others and Plaintiffs rights.

98.     The conduct alleged herein was performed to promote sales of MTBE and/or

26

gasoline containing MTBE in conscious disregard of the known risks of injury to health, property and the environment. The defendants identified in the preceding paragraph acted with willful and conscious disregard of the probably dangerous consequences of that conduct and its foreseeable impact upon the Plaintiff. Therefore, Plaintiffs request an award of enhanced damages against these defendants that fairly reflects the aggravating circumstances alleged herein.

WHEREFORE, the Plaintiffs pray judgment against defendants as set forth hereafter.

## COUNT II

### (Strict Product Liability Based on Failure to Warn Against All Defendants)

99.    Plaintiffs reallege paragraphs 1 through 98 above, and by this reference incorporate them as though set forth in full.

100.   The manufacturer defendant designed, manufactured, formulated, promoted, marketed, distributed, exchanged and/or sold MTBE to refiners, including certain refiner/marketer defendants, for use as a component of gasoline.

101.   The refiner/marketer defendants, and each of them, designed, manufactured, formulated, refined, set specifications for, exchanged, promoted, marketed and/or otherwise supplied (directly or indirectly) gasoline containing MTBE that was delivered into nearby gasoline station and then into Plaintiffs' water supply.

102.   Defendants, and each of them, represented, asserted, claimed and warranted that gasoline containing MTBE could be used in the same manner as gasoline not containing MTBE, and/or otherwise did not require any different or special handling or precautions.

103.   Defendants, and each of them, knew that MTBE and/or gasoline containing

MTBE were to be purchased and used without inspections for defects.

104.    MTBE and/or gasoline containing MTBE are defective and unreasonably dangerous products for the reasons set forth above.

105.    Defendants, and each of them, knew, or reasonably should have known, of the foreseeable risks and defects of MTBE and/or gasoline containing MTBE.  Defendants nonetheless failed to provide adequate warnings of the known and foreseeable risks of MTBE and/or gasoline containing MTBE, including contamination of groundwater with MTBE.

106.    MTBE and/or gasoline containing MTBE were used in a manner in which they were foreseeably intended to be used, and as a proximate result of defendants' failure to warn of the risks of MTBE and/or gasoline containing MTBE that were known to them, MTBE contaminates and threatens the Plaintiffs persons and property, causing Plaintiffs to sustain the injuries and damages set forth in this Writ.

107.    As a direct and proximate result of defendants' acts and omissions as alleged herein, the Plaintiffs have incurred, are incurring, and will continue to incur, investigation, remediation, cleanup, restoration, removal, treatment and monitoring costs and expenses related to contamination of their property and persons with MTBE, in an amount within the jurisdictional limits of this Court, for which defendants are strictly, jointly and severally liable.

108.    As a further direct and proximate result of the acts and omissions of the defendant alleged in this Writ, the Plaintiffs have sustained and will sustain other substantial expenses and damages, in an amount within the jurisdictional limits of this Court, for which defendants are strictly, jointly and severally liable.

109.    For the reasons set forth and specifically alleged in paragraphs 1 through 92 the

28

Plaintiffs are entitled to an award of enhanced damages against defendants Hess, Citgo, Chevron, ConocoPhillips, ExxonMobil, Gulf, Lyondell, Shell, Sunoco, Texaco, Unocal, and Valero that fairly reflects the aggravating circumstance alleged herein. After the completion of additional investigation and discovery, the Plaintiffs may seek leave of court to amend this Writ fo allege a claim for enhanced damages against additional defendants are warranted by the facts.

WHEREFORE, Plaintiff prays judgment against defendants as set forth hereafter.

## COUNT III

### (Nuisance Against All Defendants)

110.    Plaintiff reallege paragraphs 1 through 109 above, and by this reference incorporates them as though set forth in full.

111.    The negligent, reckless, intentional and ultra hazardous activity of defendants, and each of them, alleged herein has resulted in the contamination and pollution of the Plaintiffs property alleged herein, and constitutes a nuisance.

112.    The nuisance caused, contributed to, maintained, and/or participated in by defendants, and each of them, has substantially and unreasonably interfered with, obstructed and/or threatened, among other things, the Plaintiffs' significant property interests.

113.    Each defendant has, at all times relevant to this action, caused, maintained, participated in and/or assisted in the creation of such public nuisance. Among other things, each defendant is a substantial contributor to such public nuisance as follows:

 a.    The manufacturer defendant manufactured, promoted and supplied MTBE to refiners when it knew, or reasonably should have known, that: (I) the refiners would in turn blend the MTBE into gasoline; (ii) each gasoline containing MTBE

29

would then be placed into leaking gasoline delivery systems, including those in

the State; (iii) MTBE would be released even mor readily than the constituents of

conventional gasoline from gasoline delivery systems; and (iv) when released into

the subsurface, MTBE would spread farther and faster than other components of

gasoline, resist biodegradation, contaminate groundwater, including drinking

water supplies, and, ultimately, be difficult and costly to find and remove from the

Plaintiffs' water supply.

b.      The refiner/marketer defendants, and each of them, refined, marketed and/or

otherwise supplied gasoline containing MTBE that was delivered into the State

(and areas affecting the waters of the State), when they knew, or reasonably

should have known, that: (I) such gasoline would be placed into leaking gasoline

delivery systems; (ii) MTBE would be released even more readily than the

constituents of conventional gasoline from gasoline delivery systems; (ii) MTBE

would be released even more readily than the constituents of conventional

gasoline from gasoline delivery systems; and (iii) when released into the

subsurface, MTBE would spread farther and faster than other components of

gasoline, resist biodegradation, contaminate groundwater, including drinking

water supplies, and, ultimately, be difficult and costly to remove from the

Plaintiffs' water supply.

c.      Defendants Hess, Citgo, Chevron, ConocoPhillips, El Paso, ExxonMobil, Gulf,

Irving, Shell, Sunoco, Texaco, Unocal and Valero had first-hand knowledge and

experience regarding leaking gasoline delivery systems and releases of MTBE to

groundwater therefrom.  These defendants obtained such first-hand knowledge and experience because each of them owned, operated and/or controlled individual gasoline stations located at in NH, particularly the Town of West Swanzey with leaking gasoline delivery systems.

d.  Defendants, and each of them, manufactured, refined, marketed, promoted, and/or otherwise supplied MTBE and/or gasoline containing MTBE to the gasoline station at 968 West Swanzey Road, West Swanzey, when they knew, or reasonably should have known, that MTBE would: (i) be released into the environment from commercial and consumer uses and sources in the State other than gasoline delivery systems; and (ii) contaminate the Plaintiffs' drinking water.

e.  Despite their knowledge that contamination of the waters of the State with MTBE was the inevitable consequence of their conduct as alleged herein, defendants, and each of them, failed to provide any warnings or special instructions, or take any other precautionary measurers to prevent or mitigate such contamination.

f.  Defendants Hess, Citgo, Chevron, ConocoPhillips, ExxonMobil, Gulf, Lyondell, Shell, Sunoco, Texaco, Unocal and Valero engaged in separate and joint activities to suppress, conceal and/or minimize information regarding the hazards of MTBE in order to mislead Plaintiffs, and the public regarding the hazards of MTBE.

114.  The nuisance, caused, contributed to, maintained, and/or participated in by defendants, and each of them, has caused and/or threatens to cause substantial injury to the property of the Plaintiffs.

115.  The contamination of the waters of the State with MTBE alleged herein has varied

over time and has not yet ceased.  MTBE continues to threaten, migrate into and enter the waters of the Plaintiffs.  The harm is continuing.

116.    As a direct and proximate result of defendants' acts and omissions as alleged herein, the Plaintiffs have incurred, are incurring, and will continue to incur, investigations, remediation, cleanup, restoration, removal, treatment and monitoring costs and expenses related to contamination of the Plaintiffs' water supply with MTBE, in an amount within the jurisdictional limits of this Court, for which defendants are jointly and severally liable.

117.    As a further direct and proximate result of the acts and omissions of the defendants alleged in this Writ, the Plaintiffs have sustained and will sustain other substantial expenses and damages, in an amount within the jurisdictional limits of this Court, for which defendant are jointly and severally liable.

118.    For the reasons set forth and specifically alleged in paragraphs 1 through 101 the Plaintiffs are entitled to an award of enhanced damages against defendants Hess, Citgo, Chevron, ConocoPhillips, ExxonMobil, Gulf, Lyondell, Shell, Sunoco, Texaco, Unocal, and Valero that fairly reflects the aggravating circumstance alleged herein.  After the completion of additional investigation and discovery, the Plaintiffs may seek leave of court to amend this Writ fo allege a claim for enhanced damages against additional defendants are warranted by the facts.

WHEREFORE, the Plaintiffs pray judgment against defendants as set forth hereafter.

## COUNT IV

### (Strict Liability Under RSA 146-A/146-G Against All Defendants)

119.    The Plaintiffs reallege paragraphs 1 through 118 above, and by this reference incorporate them as though set forth in full.

32

120.    RSA 146-A:3 provides that the discharge or spillage of oil into the surface water or groundwater of this State, or in a land area where the oil will ultimately seep into surface water or groundwater is prohibited.

121.    MTBE is an "oil" as defined in RSA 146-A, which includes petroleum products and their by-products of any kind, and in any form.

122.    RSA 146-A:3-a provides that any person who, without regard to fault, directly or indirectly causes or suffers the discharge of oil into or onto any surface water or groundwater of this State, or in a land area where oil will ultimately seep into any surface water or groundwater of the State in violation of chapter 146-A, or rules adopted thereunder, shall be strictly liable for costs directly or indirectly resulting from the violation relating to: (a) containment of the discharged oil; (b) cleanup and restoration of the site and surrounding environment, and corrective measurers as defined under RSA 146-A:11-a, III(a) and (b); and © removal of the oil.

123.    Significant evidence shows the release and discharge of MTBE at the Swanzey gasoline station.

## COUNT V

### (Trespass Against All Defendants)

124.    The Plaintiffs reallege paragraphs 1 through 123 above, and by this reference incorporate them as though set forth in full.

125.    The Plaintiffs are the owners and/or actual possessor of property rights nearby.

126.    Defendants, and each of them, intentionally manufactured, refined, marketed, and/or otherwise supplied MTBE and/or gasoline containing MTBE with the knowledge that contamination of the waters of the State with MTBE was substantially certain to result, and did

result in the Town of West Swanzey, and directed the material to that location.

127.    Among other things, defendants, and each of them, intentionally caused MTBE to enter,
invade, intrude upon and injure the Plaintiffs person and property as follows:

       a.      The manufacturer defendant manufactured, promoted and supplied MTBE to
refiners when it knew that it was substantially certain that: (I) the refiners would
in turn blend the MTBE into gasoline; (ii) such gasoline containing MTBE would
then be placed into leaking gasoline delivery systems, including those in the State;
(iii) MTBE wold be released even more readily than the constituents of
conventional gasoline from gasoline delivery systems; and (iv) when released into
the subsurface, MTBE would spread farther and faster than other components, of
gasoline, resist biodegradation, contaminate groundwater, including drinking
water supplied, and, ultimately, be difficult and costly to find and remove from
the water.

       b.      The refiner/marketer/retail defendants, and each of them, refined, marketed, sold
and/or otherwise supplied gasoline containing MTBE that was delivered into the
State (and areas affecting the waters of the State), when they knew that it was
substantially certain, that: (I) such gasoline would be placed into leaking gasoline
delivery systems; (ii) MTBE would be released even more readily than the
constituents of conventional gasoline from gasoline delivery systems; and (iii)
when released into the subsurface, MTBE would spread farther and faster than
other components of gasoline, resist biodegradation, contaminate groundwater,
including drinking water supplies, and, ultimately, be difficult and costly to

remove form the water.

c.      Defendants Hess and Irving had first-hand knowledge and experience regarding leaking gasoline delivery systems and releases of MTBE to groundwater therefrom. These defendants obtained such first-hand knowledge and experience because each of them owned, operated and/or controlled individual gasoline stations with leaking gasoline delivery systems, including gasoline stations in the State.

d.      Defendants, and each of them, manufactured, refined, marketed, promoted, and/or otherwise supplied MTBE and/or gasoline containing MTBE to downstream handlers, when they knew, or reasonably should have known, that MTBE would: (I) be released into the environment from commercial and consumer uses and sources in the State other than gasoline delivery systems; and (ii) contaminate the waters of the State.

e.      Despite their knowledge that contamination of the waters of the State with MTBE was the inevitable consequence of their conduct as alleged herein, defendants, and each of them, failed to provide any warnings or special instructions, or take any other precautionary measurers to prevent or mitigate such contamination.

f.      Defendant Hess, engaged in separate and joint activities to suppress, conceal and/or minimize information regarding the hazards of MTBE in order to mislead government agencies, including the State, and the public regarding the hazards of MTBE.

128.    The contamination of the waters of the State with MTBE alleged herein has varied

35

over time and has not yet ceased.  MTBE continues to threaten, migrate into and enter the property of the Plaintiffs.

129.   The Plaintiffs have not consented to and doe not consent to the trespass alleged herein.  Defendants, and each of them, knew or reasonably should have known, that the Plaintiffs would not consent to this trespass.

130.   As a direct and proximate result of defendants' acts and omissions as alleged herein, Plaintiffs have incurred, are incurring, and will continue to incur, investigations, remediation, cleanup, restoration, removal, treatment and monitoring costs and expenses related to contamination with MTBE, in an amount within the jurisdictional limits of this Court, for which defendants are jointly and severally liable.

131.   As a further direct and proximate result of the acts and omissions of the defendants alleged in this Writ, the Plaintiffs have sustained and will sustain other substantial expenses and damages, in an amount within the jurisdictional limits of this Court, for which defendant are jointly and severally liable.

WHEREFORE, the Plaintiffs pray judgment against defendants as set forth hereafter.

## COUNT VI

### (Negligence Against All Defendants)

132.   The Plaintiffs reallege paragraphs 1 through 131 above, and by the reference incorporates them as though set forth in full.

133.   Defendants had a duty to the Plaintiffs to exercise due care in the design, manufacture, formulation, handling, control, disposal, marketing, sale, testing, labeling, use, and instructions of use of MTBE and/or gasoline containing MTBE.

36

134.    Defendants so negligently, carelessly, and recklessly designed, manufactured, formulated, handled, labeled, instructed, controlled (or failed to control), tested (or failed to test), marketed, sold and otherwise entrusted MTBE and gasoline containing MTBE that they breached their duties and directly and proximately caused MTBE to contaminate and threaten the Plaintiff persons and property, resulting in the damages alleged in this Writ.

135.    Among other things, Defendants, and each of them, failed to conduct reasonable, appropriate or adequate scientific studies to evaluate the environmental fate and transport characteristics of MTBE, and/or the likelihood that use of MTBE as a component of gasoline would pollute Plaintiffs water supplies, render Plaintiffs drinking water unusable and unsafe, and threaten Plaintiffs health and welfare and damage the property of Plaintiffs.

136.    Defendant Hess' first-hand knowledge and experience regarding leaking gasoline delivery systems and releases of MTBE to groundwater therefrom.  These defendants obtained such first-hand knowledge and experience because each of them owned, operated and/or controlled individual gasoline stations with leaking gasoline delivery systems, including gasoline stations in the State.

137.    Despite their knowledge that contamination of the waters of the State with MTBE was the inevitable consequence of their conduct as alleged herein, defendants, and each of them, failed to provide any warnings or special instructions, or take any other precautionary measurers to prevent or mitigate such contamination.

138.    In light of the facts alleged herein, defendants, and each of them, breached their duty to use due care in the design, manufacture, formulation, handling, control, marketing, sale, testing, labeling, use, and instructions for use of MTBE and/or gasoline containing MTBE.

139.    As a direct and proximate result of defendants' acts and omissions as alleged herein, Plaintiffs have incurred, are incurring, and will continue to incur, investigations, remediation, cleanup, restoration, removal, treatment and monitoring costs and expenses related to contamination with MTBE, in an amount within the jurisdictional limits of this Court, for which defendants are jointly and severally liable.

140.    As a further direct and proximate result of the acts and omissions of the defendants alleged in this Writ, the Plaintiffs have sustained and will sustain other substantial expenses and damages, in an amount within the jurisdictional limits of this Court, for which defendant are jointly and severally liable.

141.    For the reasons set forth and specifically alleged in paragraphs 1 through 124 the Plaintiffs are entitled to an award of enhanced damages against defendants Hess, Citgo, Chevron, ConocoPhillips, ExxonMobil, Gulf, Lyondell, Shell, Sunoco, Texaco, Unocal, and Valero that fairly reflects the aggravating circumstance alleged herein.  After the completion of additional investigation and discovery, the Plaintiffs may seek leave of court to amend this Writ fo allege a claim for enhanced damages against additional defendants are warranted by the facts.

WHEREFORE, the Plaintiffs pray judgment against defendants as set forth hereafter.

## COUNT VII

### (Unfair or Deceptive Business Acts In Violation of RSA 358-A:2 Against All Defendants)

142.    Plaintiffs reallege paragraphs 1 through 141 above, and by this reference incorporate them as though set forth in full.

143.    Plaintiffs are persons damages by defendants and are victims of defendants deceptive trade practices.

144.     Defendants, and each of them, have engaged in acts and/or practices in the conduct of trade and commerce within the State that is unfair and deceptive in violation of RSA 358-A:2 in connection with their design, testing, manufacture, promotion, marketing and sup0ply of gasoline containing MTBE.  Such acts and/or practices include, but are not limited to, the following:

a.     Defendants, and each of them, represented that MTBE and/or gasoline containing MTBE were environmentally sound products appropriate for widespread production and use, when they were not environmentally sound and appropriate for widespread production and use.

b.     Despite their knowledge that MTBE is more readily released from gasoline delivery systems then conventional gasoline components, and that, once released in the environment, the fate and transport of MTBE in the subsurface differs significantly from that of conventional gasoline constituents, defendants represented that gasoline containing MTBE does not require special handling, storage or other procedures to mitigate or prevent the special dangers posed by MTBE.

c.     Despite their knowledge that environmental contamination, and particularly drinking water contamination, with MTBE was the inevitable consequence of their conduct as alleged herein, defendants, and each of them, failed to provide any warnings or special instructions regarding the threat caused by MTBE, or take any other precautionary measurers to prevent or mitigate such contamination.

d.     Defendant Hess, engaged in separate and joint activities to suppress, conceal

and/or minimize information regarding the hazards of MTBE in order to mislead

government agencies, Plaintiffs, and the public regarding the hazards.

145.    By committing the acts and omissions alleged above, among others, defendants,

and each of them, have used unfair or deceptive acts or practices in violation of RSA § 358-A:2.

146.    Pursuant to RSA 358-A:4, b, each defendant is, among other things, subject to

civil penalties of up to $10,000 for each violation.

147.    Pursuant to RSA 358 defendants are subject to an award of the Plaintiffs legal

costs and expenses.

WHEREFORE, the Plaintiffs pray judgment against defendants as set forth hereafter.

## COUNT VIII

**(Negligence and Trespass Against Shri Ganech Corp c/o Dharnem Patel and Faham and**

**Shagugta Effendi and Joseph Hart and Richard Cartier and Peterborough Oil Company)**

148.    Plaintiffs reallege paragraphs 1 through 147 above, and by this reference

incorporate them as though set forth in full.

149.    On or about May 31, 1990, gasoline containing MTBE continued to leak from gas

station(s) located on Route 10 in West Swanzey, particularly 968 West Swanzey Road, to the

wells and water systems located on the properties of the Plaintiffs.  Specifically, MTBE has been

moving in a plume through groundwater, and getting into the drinking water supplied to wells

owned and utilized by the residents as their sole source of water supply.

150.    Approximately 14" of MTBE gasoline/water was observed in the gas station

adjacent to the property, and another catch basin across Route 10 was also impacted.

151.    Thereafter, approximately 540 tons (21 dump trucks), of contaminated soil was

extracted around the gas station and tanks at 968 West Swanzey Road. As a result, MTBE from the gasoline leaked into the water source utilized by the resident plaintiffs.

152.    Upon information and belief, this contamination was discovered in May 1990 causing contamination to the water source utilized by the resident plaintiffs.

153.    To date, said water source utilized by said resident plaintiffs continues to be contaminated.

154.    As a result of long term consumption of contaminated water by the resident plaintiffs, the residents have become ill, died, suffered property loss and other damages continue to date.

155.    Defendants so negligently, carelessly, and recklessly designed, manufactured, formulated, handled, labeled, instructed, controlled (or failed to control), tested (or failed to test), marketed, sold and otherwise entrusted MTBE and gasoline containing MTBE that they breached their duties and directly and proximately caused MTBE to contaminate and threaten the Plaintiff persons and property, resulting in the damages alleged in this Writ.

156.    As a result of Defendants failure to remediate and prevent the MTBE gasoline to enter onto the premises of the resident Plaintiffs without any right or authority to enter onto the premises of the resident Plaintiffs without any right, lawful authority, or an express or implied invitation, or an intentional failure to leave the premises of the resident Plaintiffs after the contamination was discovered. As a result and as a direct consequent of the trespass including, but not limited to, mental suffering, loss of property value, becoming physically ill, among other damages, all have been damaged within the jurisdictional limits of this court.

41

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request a trial of this Action before a jury, and that, upon a favorable verdict, this Honorable Court enter judgment in favor of the Plaintiffs and against defendants, jointly and severally, as follows:

A.  Declare that defendants are jointly and severally liable for the full cost of all investigatory, remedial and other actions necessary to detect, abate, remove and remediate MTBE on the Plaintiffs property and to restore such waters to their original conditions, and for such orders as may be necessary to provide full relief to address risks to Plaintiffs.

B.  Order defendants to pay all costs related to investigation, containment, cleanup, restoration, corrective measurers and removal directly or indirectly resulting from the contamination of Plaintiffs property with MTBE.

C.  Order defendants to pay compensatory damages in an amount at least equal to the full cost of restoring the waters of the residents of the Town of Swanzey to their original condition prior to the contamination of such waters with MTBE, including but not limited to, the costs of:

(1)  testing Plaintiffs water supplies for the presence of MTBE;

(2)  treatment of Plaintiffs water supplies until restored and provision of alternate water supplies, where appropriate;

(3)  present and future monitoring of surface and groundwaters to detect the presence of MTBE around and on Plaintiffs' property.

D.  Order defendants to pay all other damages sustained by Plaintiffs and a direct and

42

proximate result of defendants' acts and omissions alleged herein, including but not limited to remedial, administrative, oversight and legal expenses and compensation for damage to Plaintiffs persons and property.

E.   Order defendants Hess, Citgo, Chevron, ConocoPhillips, ExxonMobil, Gulf, Lyondell, Shell, Sunoco, Texaco, Unocal and Valero to pay enhanced damages that fairly reflect the aggravating circumstances alleged herein.

F.   Order defendants to pay any and all other damages permitted by law.

G.   Grant all appropriate injunctive relief to abate or mitigate the MTBE contamination of Plaintiffs' property.

H.   Order defendants to pay costs, including reasonable attorneys' fees, incurred in prosecuting this action, together with prejudgment interest, to the full extent permitted by law.

I.   Grant such other further relief as this Honorable Court deems just and proper.

**A JURY TRIAL IS DEMANDED ON ALL COUNTS SO TRIABLE.**

Date:   4-8-16

Respectfully submitted.

Plaintiffs,

By and through their Counsel
McGRATH LAW FIRM, PA
20 Montgomery Street
Concord, NH   03301
(603) 224-7111
Fax (603) 228-8095

Peter G. McGrath, Esq. - No. 5564
Daniel J. Morley, Esq. - No. 16932

PLAINTIFFS' ADDRESS

| | | |
|---|---|---|
| Patrick Short<br>247 W Port Village Road<br>West Swanzey, NH   03469 | Nicole Cote f/b/o<br>Stephanie Cote<br>388 DW Highway #15<br>Meredith, NH 03253 | Tammy Demond<br>12 Pond Road<br>Swanzey, NH 03446 |
| Marion J. Bedard<br>956 W. Swanzey Road<br>P.O. Box 1<br>W. Swanzey, NH 03469 | Armond J. Bedard<br>956 W. Swanzey Road<br>P.O. Box 1<br>W. Swanzey, NH 03469 | Julie Bedard<br>32 Stratton Road<br>Scarborough, ME   04074 |
| Gale W. Shelley<br>7 Brookview Road<br>Swanzey, NH 03446 | Anastasia Drouin<br>1333 SE 168th Place<br>Portland, OR 97233 | David Bashaw, Jr.<br>241 Westport Village Road<br>Swanzey, NH 03446 |
| Darren Bashaw<br>36 Murdough Hill Road<br>Nelson, NH   03457 | Robert Symonds<br>1026 West Swanzey Road<br>Swanzey, NH 03446 | Connie Merrill<br>36 Murdough Hill Road<br>Nelson, NH 03457 |
| Teresa Chandler<br>898 W Swanzey Road<br>West Swanzey, NH 03446 | Jillian Woods<br>48 Woodland Avenue<br>Keene, NH 03431 | Kelly Denis<br>118 Lot Lane<br>Swanzey, NH 03446 |
| Joseph Arsenault<br>3 Eastview<br>Swanzey, NH 03446 | Robert LaClair<br>121 Lot Lane<br>Swanzey, NH 03446 | Christine House<br>233 Westport Village Road<br>Swanzey, NH 03446 |
| Karen Smith<br>73 Terry Lane, Unit #2<br>West Swanzey, NH   03446 | | |