UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Patrick Short, et al.

     v.

Amerada Hess Corp. et al.

                                      Civ. No. 16-cv-204-JL
                                      Opinion No. 2019 DNH 062

**MEMORANDUM ORDER**

Whether the plaintiffs in this environmental-contamination action may take it past the summary judgment stage depends on whether (1) they have demonstrated standing to sue, see U.S. Const. art. III, § 2, and (2) they filed this action within New Hampshire's three-year statute of limitations, accounting for the discovery rule, see N.H. Rev. Stat. Ann. § 508:4.

Nineteen individual plaintiffs commenced this action in 2016, alleging that an underground gasoline leak discovered in 1990 in Swanzey, New Hampshire, injured their persons and property.[1]  The gasoline contained methyl-tertiary butyl ether ("MTBE"), an additive that New Hampshire has banned since 2007. The defendants are gasoline manufacturers and suppliers and the current and former owners of the gas station from which the leak

---

[1] Four of those plaintiffs have dismissed their claims and the plaintiffs do not oppose the defendants' motion to dismiss plaintiff Robert LaClair's claims (doc. no. 48), which the court accordingly grants.

emanated.  The court's subject matter jurisdiction over this removed case is based on diversity, 28 U.S.C. §§ 1332(a), 1446, and the Energy Policy Act of 2005, see 42 U.S.C. § 7545 note (Claims Filed After August 8, 2005), Pub. L. 109-58, Title XV, § 1503, Aug. 8, 2005 ("[c]laims and legal actions filed after [August 8, 2005] related to allegations involving actual or threatened contamination of [MTBE] may be removed to the appropriate United States district court.").

The 14 plaintiffs remaining in this action assert products-liability and negligence claims arising from alleged injuries to their persons.[2]  Ten plaintiffs also assert nuisance and trespass claims, arguing that the value of their real property has been diminished by the presence of MTBE.[3]  And all plaintiffs assert a claim under New Hampshire's Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A, contending that the defendants engaged in unfair and deceptive business practices.  The defendants move for summary judgment, see Fed. R. Civ. P. 56, arguing that all

---

[2] Specifically, plaintiffs Joseph Arsenault, David Bashaw, Jr., Darren Bashaw, Armond Bedard, Marion Bedard, Julie Bedard, Teresa Chandler, Nicole Cote (for the benefit of Stephanie Cote), Tammy Demond, Christine House, Connie Merrill, Gale Shelley, Patrick Short, and Robert Symonds.

[3] Specifically, plaintiffs Joseph Arsenault, David Bashaw, Jr., Armond Bedard, Marion Bedard, Teresa Chandler, Tammy Demond, Christine House, Gale Shelley, Patrick Short, and Robert Symonds.

of the plaintiffs' claims except one[4] are barred either for lack of standing or by the applicable statute of limitations.[5]

Having reviewed the parties' filings and exhibits, including supplemental filings after oral argument, the court grants the defendant's motion in large part and denies it in part. Specifically, all plaintiffs' claims under the New Hampshire Consumer Protection Act are barred by its statute of limitations. And all plaintiffs except Teresa Chandler have failed to carry their burdens of demonstrating standing or that the discovery rule prevents the statute of limitations from barring their tort claims. Accordingly, the court grants the defendants' motions as to all plaintiffs' claims except Chandler's tort claims.

I. **Applicable legal standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[4] The defendants "do not seek summary judgment on Chandler's property damage claim" through this motion. Defendants' Supp. Mem. (doc. no. 72) at 46.

[5] The court previously denied without prejudice the defendants' motion to dismiss plaintiffs' claims. See Endorsed Order, (Sept. 27, 2017). That motion asserted several grounds for dismissal, including the statute of limitations and plaintiffs' standing to sue. The parties subsequently agreed to address those issues through summary judgment after a period of limited discovery. See Stipulations (doc. nos. 32, 33).

Civ. P. 56(a).  The moving party must "assert the absence of a genuine issue of material fact and then support that assertion by affidavits, admissions, or other materials of evidentiary quality." Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003).  "A genuine issue is one that could be resolved in favor of either party, and a material fact is one that has the potential of affecting the outcome of the case." Vera v. McHugh, 622 F.3d 17, 26 (1st Cir. 2010) (internal quotation omitted).

Where, as here, the plaintiffs bear the ultimate burden of proof, once the movant has made the requisite showing, they can no longer "rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." Torres-Martínez v. P.R. Dep't of Corr., 485 F.3d 19, 22 (1st Cir.2007).  That is, the plaintiffs "'may not rest upon the mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue' of material fact as to each issue upon which [they] would bear the ultimate burden of proof at trial." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52-53 (1st Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

As it is obligated to do in the summary judgment context, the court "rehearse[s] the facts in the light most favorable to

the nonmoving party (here, the plaintiff[s]), consistent with record support," and gives them "the benefit of all reasonable inferences that those facts will bear." Noviello v. City of Boston, 398 F.3d 76, 82 (1st Cir. 2005) (internal citation omitted).

The following background takes this approach, drawing on the parties' recitations of undisputed, accepted facts except where noted. Before moving on to that recitation, the court observes that it was hampered in this endeavor by the plaintiffs' failure to comply with Local Rule 56.1, which requires that "[a] memorandum in opposition to a summary judgment motion shall incorporate a short and concise statement of material facts, supported by appropriate record citations, as to which the adverse party contends a genuine dispute exists so as to require a trial." LR 56.1(b). Failure to comply with this requirement and properly oppose a motion for summary judgment, as the plaintiffs have failed to, may result in "[a]ll properly supported material facts set forth in the moving party's factual statement [being] deemed admitted . . . ." Id.

In their opposition, the plaintiffs specifically refer to only four of the defendants' listed facts and state their general disagreement with defendants' characterizations of

others.[6]  In addition, plaintiffs' two-page statement of facts

contains no record citations, as LR 56.1(b) requires.[7]  The

plaintiffs' supplemental memorandum[8] illuminates a few disputes

left opaque by their objection, but generally fails to remedy

the error because, in large part, the plaintiffs merely repeat

their original opposition.[9]

The Local Rules are "aimed at enabling a district court to

adjudicate a summary judgment motion without endless rummaging

through a plethoric record." Puerto Rico Am. Ins. Co. v.

Rivera-Vázquez, 603 F.3d 125, 131–32 (1st Cir. 2010).  The court

is loath to engage in "the sort of archeological dig that [such]

anti-ferret rules are designed to prevent[,]" id. at 131, and

will therefore "deem[ ] admitted" all "properly supported

material facts set forth in [the defendants'] factual

statement." LR 56.1(b); Fed. R. Civ. P. 56(e)(2).  But any such

admissions do not automatically entitle the defendants to

summary judgment.  "[T]he district court is still obliged to

consider the motion on its merits, in light of the record as

---

[6] Plaintiffs' Obj. (doc. no. 60-1) at 4.

[7] See id. at 3-4.

[8] Plaintiffs' Supp. Mem. (doc. no. 71).

[9] E.g., id. at 14-15, 17 (repeating verbatim arguments concerning
Armond and Marion Bedard and Gale Shelley); id. at 19 (repeating
largely verbatim arguments concerning Darren Bashaw).

constituted, in order to determine whether judgment would be legally appropriate." Aguiar-Carrasquillo v. Agosto-Alicea, 445 F.3d 19, 25 (1st Cir. 2006) (quotation and citation omitted).

## II.  **Background**

The following facts are undisputed.  In May 1990, gasoline contamination was discovered in two catch basins located on Route 10 in Swanzey, New Hampshire, adjacent to a gas station and mini mart.  Approximately 14 inches of gasoline-contaminated water was observed in that catch basin; another catch basin across Route 10 was also impacted.  After an investigation by the New Hampshire Department of Environmental Services ("NH DES") and further testing, three underground storage tanks were removed from the gas station.

Since 1990, DES has overseen and approved remediation and testing of the gas station location.  GeoInsight, the gas station's primary environmental consultant, provided detailed reports summarizing site activity to NH DES.  The reports have been publicly available on the NH DES website.  The gas station work required that certain nearby water supplies be regularly tested under NH DES supervision, including those serving several of the plaintiffs.  These residential water supply test results were also given to the residents and are available to the public.

In 2003, the State of New Hampshire sued several oil companies for MTBE contamination. The state settled with some of the defendants for $35 million and a jury awarded the state $236 million in damages in April 2013. See State v. Exxon, 168 N.H. 211 (2015). The State of New Hampshire banned the sale of gasoline containing MTBE in 2007. See N.H. Rev. Stat. Ann. § 146-A:19 (MTBE ban as presently codified); N.H. Rev. Stat. Ann. § 146-G:12 (MTBE ban as originally enacted; repealed 2015).

The plaintiffs are current or former Swanzey residents who allege their health and property were impacted by MTBE resulting from the underground gasoline leaks. They have sued CITGO Petroleum Corporation ("CITGO") and ExxonMobil Corporation and ExxonMobil Oil Corporation (collectively, "ExxonMobil") as manufacturers, marketers, or suppliers of gasoline containing MTBE, which plaintiffs allege has damaged their water supplies, caused them to suffer personal injuries, and diminished their property values. The plaintiffs also sued defendants Shri Ganesh Corporation, Joseph Hart, and Peterborough Oil Company in their alleged capacities as the current and former gas station owners.

The defendants initially moved to dismiss the plaintiffs' complaint, largely on the same grounds raised in their summary judgment motion. With agreement from the parties, the court denied those motions without prejudice and allowed a period of

discovery followed by summary judgment motions limited to those issues.[10]  The court reviewed the parties' filings and exhibits and held oral argument on the defendants' motions on September 25, 2018.

Following that argument, the court ordered the parties to supplement their submissions with, among other things, a clear statement of which of the defendants' arguments applied to which claims brought by which plaintiffs.[11]  The court also permitted the parties to file additional affidavits or deposition testimony that, as the parties represented at oral argument, existed and were relevant to the parties' arguments, but had not yet been made part of the summary judgment record.[12]

## III. **Analysis**

All 14 plaintiffs assert three claims arising out of alleged personal injuries suffered as a result of MTBE contamination:  (1) products liability for defective design (Count I); (2) products liability for failure to warn

---

[10] See September 27, 2017 Order; Stipulations (doc. nos. 32, 33).

[11] September 27, 2018 Procedural Order (doc. no. 68) at 2.  It became clear at the summary judgment hearing that plaintiffs' standing and the defendants' statute-of-limitations defenses turned in part on the nature of the plaintiffs' claims.  The court ordered this briefing after the summary judgment hearing so that the plaintiffs would not be prejudiced by their counsel's unfortunately imprecise pleading and briefing.

[12] Id. at 1.

(Count II); and (3) negligence (Count VI).  Ten of those plaintiffs also assert three claims arising out of alleged damage to their property:  (1) nuisance (Count III); (2) trespass (Count V); and (3) nuisance and trespass against the current and former gas station owners (Count VIII). Finally, all 14 plaintiffs bring a claim under New Hampshire's Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A:2 (Count VII).[13]

The defendants raise the same arguments with respect to each of these claims:  Either the plaintiffs have failed to demonstrate standing to bring the claim in question or the claim is barred by the statute of limitations.  The court addresses the defendants' arguments separately as to each category of claims.

### A.    Property-damage claims (Counts III, V, VIII)

Ten of the plaintiffs assert, in three counts, the common-law claims of trespass and nuisance based on damage to their property through contamination by MTBE.  Though the complaint lacks any indication of which plaintiffs assert which counts, in their supplemental memorandum ordered by the court the

---

[13] The plaintiffs also brought a claim asserting the defendants' strict liability under N.H. Rev. Stat. Ann. §§ 146-A and 146-G (Count IV), but have withdrawn that claim.  See Plaintiffs' Supp. Mem. (doc. no. 71) at 3 (characterizing Count IV as "Withdrawn by Plaintiffs").

plaintiffs clarified that only Arsenault, David Bashaw, Jr., Armond and Marion Bedard, Chandler, Demond, House, Shelley, Short, and Symonds assert these property-based claims.[14]  The defendants contend, and the court agrees, that Arsenault, Demond, House, Shelley, and Symonds lack standing to bring them and that, though David Bashaw, the Bedards, and Short have standing, they are barred by the statute of limitations.[15]  The defendants do not challenge Chandler's property-based claims at this posture.[16]

### 1.   Property-based tort claims

As mentioned above, the plaintiffs bring two property-related tort claims:  trespass and nuisance.  Trespass is "an intentional invasion of the property of another." Moulton v. Groveton Papers Co., 112 N.H. 50, 54 (1972).  Drawing on the Restatement (Second) of Torts, New Hampshire imposes trespass liability on a person,

> irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally (a) enters land in the possession of the other, or causes a thing or a third person to do so, or (b) remains on the land, or (c) fails to remove

---

[14] See Plaintiffs' Supp. Mem. (doc. no. 71) at 8-25 (charting plaintiffs' claims).

[15] See Defendants' Supp. Mem. (doc. no. 72) at 36-53; Supp. Reply Appx. A (doc. no. 75-1) (summarizing challenges).

[16] Defendants' Supp. Mem. (doc. no. 72) at 46.

from the land a thing which he is under a duty to remove.

Case v. St. Mary's Bank, 164 N.H. 649, 658 (2013) (quoting Restatement (Second) of Torts § 158 (1965)).

Where trespass involves an invasion of another's property, nuisance constitutes "an activity which results in an unreasonable interference with the use and enjoyment of another's property." Robie v. Lillis, 112 N.H. 492, 495 (1972). "A nuisance arises from the use of property, either actively or passively, in an unreasonable manner." Shea v. City of Portsmouth, 98 N.H. 22, 27 (1953). "Liability is imposed only in those cases where the harm or risk to one is greater than he ought to be required to bear under the circumstances." Robie, 112 N.H. at 496 (quoting Restatement (Second) of Torts, § 822, Comment g at 27-28 (Tent. Draft No. 17, 1971)). "This requirement of a finding of unreasonableness is the crux of the law of nuisance." Id. For example, "[e]ven the storage of gasoline and oil in large quantities constitutes a nuisance only when the hazard to adjoining property owners is substantial." Id. (citing Hilliard v. Shuff, 256 So.2d 127 (La. 1971)).

Damages in both trespass and nuisance actions "are measured primarily by the difference between the value of the real estate before and after the defendant's wrong was committed." Delay Mfg. Co. v. Carey, 91 N.H. 44, 44 (1940). See also Soucy v.

Royal, 116 N.H. 170, 172 (1976) (damages in trespass and nuisance are "determined by the difference between the value of the property with and without the trespass and nuisance").

## 2. Standing

"Although the Constitution does not fully explain what is meant by '[t]he judicial Power of the United States,' Art. III, § 1, it does specify that this power extends only to 'Cases' and 'Controversies,' Art. III, § 2." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). Rooted in the "case and controversy" requirement, the standing doctrine "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." Id. "The standing inquiry is both plaintiff-specific and claim-specific. Thus, a reviewing court must determine whether each particular plaintiff is entitled to have a federal court adjudicate each particular claim that he asserts." Pagan v. Calderon, 448 F.3d 16, 26 (1st Cir. 2006).

To satisfy the standing requirement, "a plaintiff must establish each part of a familiar triad: injury, causation, and redressability." Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012). That is, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed

by a favorable judicial decision." Spokeo, 136 S. Ct. at 1547

(citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61).

"The plaintiff, as the party invoking federal jurisdiction,
bears the burden of establishing these elements." Id. "[E]ach
element must be supported in the same way as any other matter on
which the plaintiff bears the burden of proof, i.e., with the
manner and degree of evidence required at the successive stages
of the litigation." Katz, 672 F.3d at 71 (quoting Defenders of
Wildlife, 504 U.S. at 561). So, "[i]n response to a summary
judgment motion, . . . the plaintiff can no longer rest on . . .
'mere allegations,' but must 'set forth' by affidavit or other
evidence 'specific facts,' which for purposes of the summary
judgment motion will be taken to be true." Defenders of
Wildlife, 504 U.S. at 561 (quoting Fed. R. Civ. P. 56(e)).

The defendants contend that five of the plaintiffs lack
standing to bring their property-based claims because they
cannot demonstrate the requisite injury-in-fact without evidence
that MTBE has been detected on their property.[17] Such injury "is
defined as 'an invasion of a legally protected interest which is
(a) concrete and particularized; and (b) actual or imminent, not
conjectural or hypothetical.'" Katz, 672 F.3d at 71 (quoting
Defenders of Wildlife, 504 U.S. at 560). "[C]oncreteness and

_____

[17] Defendants' Supp. Mem. (doc. no. 72) at 11-12.

particularization are distinct requirements.  An injury is concrete only if it 'actually exist[s].'"  [Hochendoner v. Genzyme Corp.](), 823 F.3d 724, 731 (1st Cir. 2016) (quoting [Spokeo](), 136 S.Ct. at 1543).  And particularization requires that a "plaintiff must adduce facts demonstrating that he himself is adversely affected" by the defendant's allegedly injurious conduct.  [Id.]() at 732.

### a) Individual water supplies (Demond, House, Shelley, and Symonds)

Plaintiffs Demond, House, Shelley, and Symonds each draw their water from wells on their own (or a next-door neighbor's) property.  To demonstrate an injury to their property for standing purposes, in this context, the plaintiffs must, "by affidavit or other evidence," set forth facts from which the court may infer that, at the very least, MTBE invaded their property (trespass) or interfered with the use of that property (nuisance).  See [Defenders of Wildlife](), 504 U.S. at 561.  They have not done so here.

No MTBE has been detected in water drawn from these plaintiffs' wells.  Specifically, the record contains no evidence that their water has ever tested positive for MTBE. Demond, Shelley, and Symonds have submitted no evidence of any testing performed on the water at their homes.  House's water

consistently tested negative for MTBE between 2011 and 2017.[18]
These plaintiffs therefore have not satisfied the injury-in-fact
element of the standing analysis.

Despite the lack of detection in their own water, both
House and Demond argue that positive MTBE tests from neighboring
properties demonstrate injury to their own property.
Specifically, House claims that her neighbor's water supply
tested positive in 2011.[19]  And Demond contends that "[t]he well
next door" tested positive in 2011.[20]  But, "the plaintiff[s]
generally must assert [their] own legal rights and interests,
and cannot rest [their] claim to relief on the legal rights or
interests of third parties."  Warth v. Seldin, 422 U.S. 490, 499
(1975).  They must, instead "adduce facts demonstrating that
[they themselves are] adversely affected" by the defendant's
allegedly injurious conduct.  Hochendoner, 823 F.3d 732.  Thus,
in this case, invasion of another's land does not confer

---

[18] Defendants' Mem. (doc. no. 49-1) ¶¶ 103-04.

[19] See Plaintiffs' Supp. Mem. (doc. no. 71) at 24.

[20] Id. at 12.  As the defendants correctly observe, though Demond
does share a well with her next-door neighbor, the documents
plaintiffs cite as reflecting a positive test in "the well next
door" do not relate to a neighboring property.  Instead, they
refer to a home over half of a mile from Demond's property and
considerably closer to the gas station.  See Plaintiffs'
Exs. 30-32 (doc. nos. 73-5, 73-6, 73-7); Defendants' Ex. 98
(doc. no. 63-4).  The record contains no evidence that Demond's
own water supply — or her abutting neighbor's well — ever tested
positive for MTBE.

standing on House and Demond to bring trespass claims.  And no

evidence in the record suggests interference with enjoyment of

<u>their</u> properties based on intrusion into <u>another's</u> water supply.

This is particularly true in light of the damage that the

plaintiffs allege they suffer as a result of the intrusion of

MTBE on their land.  Specifically, based on an unsigned, undated

"affidavit" from Pete Duval, a licensed real estate agent,[21] the

plaintiffs contend that they would "have to disclose MTBE was

found in the drinking water" when selling their homes, leading

to lower property values.[22]  They contend, as a result, that

"properties that have a history of exposure will . . . more

likely than not sell for less money than comparable properties

that do not have such problems."[23]  Demond's, House's, Shelley's,

and Symonds' properties have no such history of exposure.

---

[21] Plaintiffs' Ex. 57 (doc. no. 73-32).  Even if Duval's
"affidavit" supported the plaintiffs' claim of injury, an
unsigned, undated statement that "provides no basis for [the
affiant's] personal knowledge of the facts supporting his
statements" is not competent evidence at summary judgment.
Cordero-Soto v. Island Fin., Inc., 418 F.3d 114, 120 (1st Cir.
2005); <u>see also</u> Fed. R. Civ. P. 56(c)(4) ("An affidavit or
declaration used to support or oppose a motion must be made on
personal knowledge, set out facts that would be admissible in
evidence, and show that the affiant or declarant is competent to
testify on the matters stated.").

[22] Plaintiffs' Supp. Mem. (doc. no. 71) at 13.  The plaintiffs
include this allegation under the heading "Facts As To All
Property Damage Plaintiffs."  <u>See</u> <u>id.</u> at 12.

[23] <u>Id.</u> at 13 (citing Plaintiffs' Ex. 57 (doc. no. 73-32) ¶ 12).

Absent evidence of such exposure, these plaintiffs have failed to establish injury-in-fact.[24]

### b) Pine Grove water supply (Arsenault)

Unlike the plaintiffs with individual water supplies, Joseph Arsenault owns a mobile home in the Pine Grove Mobile Home Park. "Pine Grove operates a community public water system for its residents" and is "required by law to provide customers with reports describing contaminants," such as MTBE, "detected in the water supply."[25] The undisputed record evidence shows that MTBE was never detected in Pine Grove's community water supply during the time Arsenault lived there,[26] from 1980 to 1984 and from 2000 to the present.[27]

---

[24] They further contend that "it is well-known in the Swanzey, New Hampshire market that many properties have" problems with MTBE. Plaintiffs' Supp. Mem. (doc. no. 71) at 13 (quoting Plaintiffs' Ex. 57 (doc. no. 73-32) ¶ 13). Absent reference to their specific properties, this statement does not support particularized injury for any of the plaintiffs in this action. Nor does it appear based on the affiant's personal knowledge.

[25] Defendants' Mem. (doc. no. 49-1) ¶¶ 71-72.

[26] See Crosby Decl. (doc. no. 54) ¶ 7.

[27] Defendants' Mem. (doc. no. 49-1) ¶ 78. The plaintiffs suggest, without evidentiary basis, that Arsenault's first sojourn at Pine Grove lasted from 1980 to 1994. See Plaintiffs' Supp. Mem. (doc. no. 71) at 23. In his deposition, however, Arsenault explained that he first lived at Pine Grove "[j]ust under four years," until 1984. Defendants' Ex. 42 (doc. no. 51-6) at 26-28.

The plaintiffs rely instead on evidence that MTBE was detected in two monitoring wells in Pine Grove.[28]  Specifically, MTBE was detected in Monitoring Well 6 in 1990, 1991, 1992, 2003, and 2004, and in Monitoring Well 10 in 1991, 1992, 2002, 2003, and 2004.[29]  But Monitoring Well 7, which appears to be that located closest to (if not on) Arsenault's lot,[30] never tested positive for MTBE.[31]

The plaintiffs also rely on an unsigned, undated "affidavit" from "professional engineer" Ellen Moyer to establish MTBE contamination of property and water in Pine Grove.[32]  Again, however, the court cannot rely on an unsworn statement at the summary judgment stage.  See Cordero-Soto, 418 F.3d at 120; Fed. R. Civ. P. 56(c)(4).

Arsenault has therefore failed to establish more than mere conjecture that MTBE has invaded the land under his mobile home; and the undisputed record evidence shows that MTBE has never

---

[28] See Plaintiffs' Supp. Mem. (doc. no. 71) at 23-24.

[29] See Plaintiffs' Ex. 72 (doc. no. 73-47) at 24.

[30] See Plaintiffs' Ex. 46 (doc. no. 73-21) (map of Pine Grove, showing Arsenault's property at lot number 3); Plaintiffs' Ex. 48 (doc. no. 73-23) (showing location of monitoring wells).

[31] See Plaintiffs' Ex. 72 (doc. no. 73-47) at 24.

[32] Plaintiffs' Ex. 44 (doc. no. 73-19).

been found in his water supply.  Accordingly, he has not demonstrated the injury-in—fact element of standing.

### c)  Plaintiffs' aquifer-based theory

All five of these plaintiffs, as well as the personal-injury plaintiffs discussed _infra_, attempt to establish standing by arguing that MTBE contamination of an aquifer underlying Swanzey must necessarily have injured each of them. Specifically, the plaintiffs argue that they all "get their source water from the same aquifer in the area of Swanzey involved,"[33] and that "[t]he mere detections of some MTBE, no matter the level," within the aquifer, "illustrates that at some point MTBE leaked into the water supply and that at some point the levels could have been much higher and have since been diluted."[34]  That is, they contend, the detection of MTBE at any level anywhere in the aquifer from which they all draw their water necessarily means contamination of their own water supply at _some_ point.

But the plaintiffs have offered no evidence in support of this leap in logic.  This theoretical contamination of property where no MTBE has been detected therefore fails to satisfy the standing requirement that the plaintiffs' injury must be

---

[33] Plaintiffs' Obj. (doc. no. 60-1) at 3.

[34] Id. at 8.

"concrete" and "particularized" — that is, it must "actually exist" and the individual plaintiff must be "adversely affected."  Hochendoner, 823 F.3d at 731-32.

Even if aquifer-wide contamination constituted a non-conjectural, particularized injury, the plaintiffs have not adduced admissible evidence from which the court could infer aquifer-wide contamination or the plaintiffs' injury as a result.  They rely first on a report from Granite State Rural Water Association, which describes the gas leak and notes that monitoring wells observed MTBE contamination in some places.[35]  But record evidence, however, also shows that other monitoring wells did not detect MTBE contamination.[36]  And nothing in the report, generally, supports the inference that MBTE contaminated the entire aquifer, even assuming that Swanzey has only one.[37]

---

[35] Plaintiffs' Ex. 7 (doc. no. 71-8).

[36] E.g., Plaintiffs' Ex. 72 (doc. no. 73-47) at 24 (no detection in, e.g., Monitoring Wells 4, 5, 7, 8S, 9S, 11).

[37] The report refers to "a highly productive stratified-drift aquifer within [Swanzey], capable of supplying ample quantities of clean drinking water."  Plaintiffs' Ex. 7 (doc. no. 71-8) at Exec. Summary.  It also refers, however, to "the aquifers" in the plural when discussing the town's water.  See id. ("the town should take action to protect this resource including enacting an ordinance to govern land uses and activities near the aquifers"); id. at 1 ("the first recommended management action was the adoption of an aquifer protection overlay district, designed to regulate land uses within the boundaries of Swanzey's stratified drift aquifers.").

The remaining evidence the plaintiffs cite in support of this theory comes from affidavits by plaintiffs Short, Demond, and Shelley.[38]  These statements, however, constitute clearly inadmissible hearsay, Fed. R. Evid. 801(c), or otherwise fail to satisfy the requirement of Federal Rule of Civil Procedure 56(c)(4) that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

Short's statements are all either based on hearsay or lack a foundation of personal knowledge.  For example, Short — who does not profess to be a hydrogeology expert and who appears to lack any personal knowledge on the question — explained that "[t]he town has told us if a private well happens to lie within an area with high transmissivity, pollution that occurs a mile away could possibly pollute that well within a few days."[39]

---

[38] To the extent that the plaintiffs rely on the affidavit of Terry Bennett for the proposition that there was a "positive identification, of MTBE in the water source (aquifer) which supplies all the private wells in the area," Plaintiffs' Ex. 77 (doc. no. 74-2) ¶ 2, Dr. Bennett, a family practitioner, offers no basis for this statement, and the court need not credit it. See Fed. R. Civ. P. 56(c)(1); Schubert v. Nissan Motor Corp., 148 F.3d 25, 29-31 (1st Cir. 1998).

[39] See Plaintiffs' Ex. 49 (doc. no. 73-24) at 1.

Short's assertion that the aquifer "is under all . . .
plaintiffs" and is contaminated with MBTE appears likewise based
on the Granite State Rural Water Association Report and a
conversation with a "well and water expert," who "explained that
the aquifer that feeds all of the wells for all of the named
plaintiffs has had MTBE in it for many years.  So all of the
plaintiffs have had exposure to MTBE from the same aquifer."[40]
He also appears to draw his knowledge concerning the size,
location, and flow rate of the aquifer from other sources.[41]
While the court takes no position on the underlying truth or
amenability to proof of these statements, or the credibility of
whoever made them, there can be no question that they constitute
inadmissible hearsay and may not be considered on summary
judgment.  Dávila v. Corporación de P.R. Para La Difusión
Pública, 498 F.3d 9, 17 (1st Cir. 2007) ("It is black-letter law
that hearsay evidence cannot be considered on summary judgment"
for the truth of the matter asserted.).

---

[40] Plaintiffs' Ex. 80 (doc. no. 74-5) ¶ 6.  See also id. ("As the
experts have explained to me, . . . the aquifer underneath the
plaintiffs' wells, has had high levels of MTBE in it for many
years.  The water expert has explained that the [flow] in the
aquifer is up to 4000 feet per day and the big leaks that took
place of MTBE would have traveled throughout the aquifer.").

[41] See Plaintiffs' Ex. 80 (doc. no. 74-5) ¶ 4.

Neither Shelley's nor Demond's statements concerning MBTE contamination of the aquifer are admissible, either. Shelley explained that he "found out from neighborhood gossip, we had MTBE poisoning in the West Swanzey aquifer."[42] And Demond stated that she has been "told that the source aquifer for our well and most of the area is contaminated from the [gas station]"; "[p]eople have told me that they have test results showing MTBE in the aquifer feeding our well. . . . I have asked for those test results to be located and provided"; and "I am told that my dug well draws from the local groundwater and it is the same ground water source that has the MTBE in it."[43] To the extent that the plaintiffs offer these statements for the truth of the matter asserted — specifically, that the source aquifer was contaminated and affected them or anyone else on the same groundwater source — they constitute inadmissible hearsay, see Fed. R. Evid. 801(c), and cannot be considered on summary judgment.

### 3.   Statute of limitations

Plaintiffs Short, David Bashaw, and Armond and Marion Bedard own property where testing revealed the presence of MTBE. The defendants, conceding standing as to these plaintiffs'

---

[42] Plaintiffs' Ex. 84 (doc. no. 74-9) ¶ 12.

[43] Plaintiffs' Ex. 33 (doc. no. 73-8) ¶¶ 18-19, 28.

property-based claims in light of those results, move for

summary judgment on those claims as time-barred.

The parties agree that New Hampshire's three-year statute

of limitations for personal actions governs the plaintiffs'

trespass and nuisance claims.[44]  Under that statute,

> Except as otherwise provided by law, all personal
> actions, except actions for slander or libel, may be
> brought only within 3 years of the act or omission
> complained of . . . .

N.H. Rev. Stat. Ann. § 508:4, I.  The parties further agree that

the underlying gas station leak which was discovered in 1990,[45]

and contamination of these plaintiffs' properties, which was

discovered in 2011, both occurred more than three years before

the plaintiffs filed this action in 2016.

The plaintiffs argue that their actions are timely under

the "discovery rule," an exception to the three-year statute of

limitations.  Under that rule,

> when the injury and its causal relationship to the act
> or omission were not discovered and could not
> reasonably have been discovered at the time of the act
> or omission, the action shall be commenced within 3
> years of the time the plaintiff discovers, or in the
> exercise of reasonable diligence should have
> discovered, the injury and its causal relationship to
> the act or omission complained of.

---

[44] Plaintiffs' Supp. Mem. (doc. no. 71) at 4; Defendants' Supp.
Mem. (doc. no. 72) at 22-23.

[45] Compl. (doc. no. 1-1) ¶ 83; Defendants' Mem. (doc. no. 49-1)
¶ 1.

N.H. Rev. Stat. Ann. § 508:4, I.  The discovery rule in New
Hampshire thus has two elements:  "First, a plaintiff must know
or reasonably should have known that it has been injured; and
second, a plaintiff must know or reasonably should have known
that its injury was proximately caused by conduct of the
defendant."  Beane v. Dana S. Beane & Co., 160 N.H. 708, 713
(2010) (citations omitted).  The plaintiffs invoking the
discovery rule have "the burden of proving that an exception
applies to toll the statute of limitations . . . ."  Feddersen
v. Garvey, 427 F.3d 108, 112 (1st Cir. 2005) (quoting Furbush v.
McKittrick, 149 N.H. 426, 430 (2003)).

### a)   Plaintiffs' notice of their claims

The undisputed evidence demonstrates that Short, David
Bashaw, and the Bedards received notice, in 2011, of positive
tests for MTBE on their property resulting from the gas
station's leak.  Thus, even setting aside the extensive press
coverage of the gas leak submitted by the defendants,[46] each of
these plaintiffs was on notice of both injury to their property

---

[46] The defendants have argued that all plaintiffs were on notice
of potential claims in light of the media's coverage of the
leak, general community knowledge about the leak, and the
State's MTBE litigation.  See Defendants' Mem. (doc. no. 49-1)
at 28-32.  Given the specific notice of MTBE contamination in
2011 received by these four plaintiffs, the court need not
address whether the plaintiffs reasonably should have known
about their claims from these other sources.

in the form MTBE contamination <u>and</u> the causal connection between that injury and the defendants' actions no later than 2011.

Short, for example, has lived across the street from the gas station since 1963 and acquired the property in 2016.[47]  His mother, who also resided there, received four notices of positive tests for MTBE on her property between September 2011 and October 2012.[48]  These notices indicated that MTBE is "a potential human carcinogen," and that "[y]ou or your family may want to share this information with your physicians."[49]  The notice also contained a link to a NH DES "Environmental Fact Sheet."[50]  According to the Fact Sheet, the DES Environmental Health Program "concludes that MTBE is an animal carcinogen.  In the interests of protecting public health, we are assuming that the animal study results are relevant to humans until additional research can confidently demonstrate otherwise."[51]

---

[47] Defendants' Mem. (doc. no. 49-1) ¶¶ 11-12.

[48] Defendants' Exs. 6-11 (doc. nos. 49-12, 49-13, 49-14, 49-15, 49-16, 49-17).

[49] E.g., Defendants' Ex. 7 (doc. no. 49-13).

[50] Id.

[51] Defendants' Ex. 8 (doc. no. 49-14).

Short was aware of these MTBE detections and was "very upset about the MTBE detected in his water supply well."[52]  He also knew of its connection to the gas station:  In 2011, a GeoInsight geologist "walk[ed] him through the process of how to get information on the [Gas Station] from the NHDES Online Database,"[53] and he consulted an attorney about a potential lawsuit.[54]  The fact that Short engaged the services of an attorney in 2011 regarding the MTBE issue forecloses any reasonable argument that Short did not know and could not reasonably have discovered "that he suffered some harm caused by the defendant's conduct." Beane, 160 N.H. at 713.

---

[52] Defendants' Mem. (doc. no. 49-1) ¶ 19; Defendants' Ex. 16 (doc. no. 50) at 11, 40, and 42-45; Defendants' Ex. 19 (doc. no. 50-3).

[53] Defendants' Mem. (doc. no. 49-1) ¶ 22.

[54] Id. ¶ 23-24; Defendants' Ex. 23 (doc. no. 50-7) ("Mr. Short was copying the file for an attorney that was considering his case."); Defendants' Ex. 24 (doc. no. 50-8) (Mar. 11, 2016 e-mail from Short to Attorney Corley, McGrath Law Firm, stating: "Its [sic] been four years and three months since I hired and paid you . . . ."); Defendants' Ex. 25 (doc. no. 50-9) (October 2011 agreement between Short and McGrath Law Firm and November 2011 cash payment from Short to McGrath Law Firm). See also Defendants' Ex. 16 (doc. no. 50) at 155-156 (notes asking "how much longer are we going to play footsie with this case" and indicating it had been seven years since MTBE was detected on his property); id. at 161 (admitting that litigation was in Short's mind in fall 2011).

The Bedards[55] and David Bashaw[56] likewise received notices
from NH DES that MTBE was detected in their drinking water in
2011.  Their notices include the same language referring to MTBE
as a "potential human carcinogen" and a reference to the DES
Fact Sheet described above.[57]  Neither the Bedards nor David
Bashaw dispute their awareness, in 2011, of MTBE contamination
on their property or its connection to the gas station leak.

### b)  Plaintiffs' counter-arguments

In an effort to counter this undisputed evidence, the
plaintiffs argue, first, that they did not know the extent of
their damages before April 2013 (at the earliest) and, second,
that one of the defendants fraudulently concealed the danger of
MTBE from them.  Neither of these arguments overcomes the
statute of limitations at the summary judgment stage because
neither creased a genuine dispute of material fact.

First, these plaintiffs submitted declarations to the
effect that they did not know the <u>extent</u> of their damages until

---

[55] Defendants' Mem. (doc. no. 49-1) ¶¶ 42, 45; Defendants' Ex. 38
(doc. no. 51-2).  The Bedards also received notice of positive
tests in 2012.  Defendants' Ex. 39 (doc. no. 51-3).

[56] Defendants' Mem. (doc. no. 49-1) ¶¶ 26-31.  David Bashaw's
water tested positive in 2011, Defendants' Exs. 12-13 (doc.
nos. 49-18, 49-19), but negative in 2012, Defendants' Ex. 31
(doc. no. 50-15).

[57] Defendants' Ex. 38 (doc. no. 51-2) (Bedards); Defendants' Ex.
13 (doc. no. 49-19) (David Bashaw).

sometime within the limitations period — that is, that they "did not know of diminution of value of their property" as a result of MTBE contamination "until after 2013," bringing their suit within the three-year limitations period.[58]  Short, for example, states that he "was not fully aware in 2013 that the MTBE problems cause cancer and [that MTBE] makes us sick," and that he "did not find out that it could damage my property value, and that I could get cancer until approximately 2014."[59]  He further contended that "it did not occur to me until after the state verdict in 2013 that my house and property value was damaged," and that he was damaged in 2015 when he "spoke to bankers, realtors, and others in 2015 who told me they will not refinance or lend more on the mortgage."[60]

The Bedards' nearly identical affidavits provide no countervailing facts to rebut the notices they received regarding MTBE and cancer.[61]  Both say only that they "had no idea [they] had a cause of action for a lawsuit for cancer back

---

[58] Plaintiffs' Obj. (doc. no. 60-1) at 5; Plaintiffs' Supp. Mem. (doc. no. 71) at 6, 8-9, 13-15, 17-18.

[59] Plaintiffs' Ex. 49 (doc. no. 73-20) ¶¶ 2, 16.

[60] Plaintiffs' Ex. 80 (doc. no. 74-5) ¶ 6.

[61] Defendants' Exs. 34-35 (doc. nos. 50-18, 50-19).

in 2011 or 2012."[62]  But they also say that they "have always been concerned about the effect MTBE has on our water supply, but we never thought about filing a lawsuit."[63]  And David Bashaw claims that he "did not find out that [MTBE] could damage [his] property value . . . until approximately 2014," when he "was basically told [his] property is worth nothing by Savings Bank."[64]

But the plaintiffs misapprehend the requirements of the discovery rule.  It does not require "the full extent of the plaintiff's injury [to have] manifested itself" or that a plaintiff "be certain of th[e] causal connection" between the harm he has suffered and the defendant's negligent or wrongful act.  Beane, 160 N.H. at 713.  "The possibility that [the causal connection] existed will suffice to obviate the protections of the discovery rule."  Id. (quotation omitted).  And "that the plaintiff could reasonably discern that he suffered some harm caused by the defendant's conduct is sufficient to render the discovery rule inapplicable."  Id. (quotation omitted).  These

---

[62] Defendants' Ex. 34 (doc. nos. 50-18) ¶ 6; Defendants' Ex. 35 (doc. no. 50-19) ¶ 6.

[63] Defendants' Ex. 34 (doc. nos. 50-18) ¶ 6; Defendants' Ex. 35 (doc. no. 50-19) ¶ 6.

[64] Defendants' Ex. 30 (doc. no. 50-14) ¶ 12.

plaintiffs' undisputed knowledge in 2011 satisfies these requirements.

Separately, Short and David Bashaw also contend that defendant Bobby Patel fraudulently concealed the dangers of MTBE from them, precluding awareness that they had a claim against the defendants until they learned otherwise in 2013.[65] "[T]he fraudulent concealment rule states that when facts essential to the cause of action are fraudulently concealed, the statute of limitations is tolled until the plaintiff has discovered such facts or could have done so in the exercise of reasonable diligence." Bricker v. Putnam, 128 N.H. 162, 165 (1986). As with the discovery rule, the plaintiffs bear the burden of demonstrating fraudulent concealment. See Furbush, 149 N.H. at 430-32.

Here, however, there is no evidence in the record that Patel concealed any essential facts from either Short or David Bashaw. Both have submitted affidavits and deposition testimony to the effect that Patel told them that the "water was safe"[66] and the MTBE contamination was "not a big deal."[67] But, as discussed supra, the undisputed evidence demonstrates that both

---

[65] See Plaintiffs' Obj. (doc. no. 60-1) at 32-35.

[66] Plaintiffs' Ex. 49 (doc. no. 73-24) at 3 (Short).

[67] Plaintiffs' Ex. 43 (doc. no. 73-18) at 57 (David Bashaw); Plaintiffs' Ex. 49 (doc. no. 73-20) ¶ 4 (Short).

Short and David Bashaw received notice of the dangers of MTBE through the DES notifications.  Because they received actual notice of the material fact that they claim Patel concealed, even if that single statement constitutes some form of concealment, it does not operate to toll the statute of limitations.  E.g., Lamprey v. Britton Const., Inc., 163 N.H. 252, 260-61 (2012) (stonemason's statement that stones "should not have come loose" did not constitute fraudulent concealment where plaintiffs knew masonry was failing).

**B.  Personal-injury claims (Counts I, II, VI)**

In addition to the ten plaintiffs' property claims, all 14 remaining plaintiffs assert three claims arising out of alleged personal injury.  Specifically, they assert claims for strict products liability on theories of defective design (Count I) and failure to warn (Count II), as well as a negligence claim (Count VI).  The defendants move for summary judgment, arguing again that the plaintiffs lack standing and that the three-year statute of limitations bars these claims.

**1.  Standing**

As discussed supra, the plaintiffs bear the burden of proving that they have standing to bring these claims.  Spokeo, 136 S. Ct. at 1547.  To carry that burden, "a plaintiff must establish each part of a familiar triad:  injury, causation, and

redressability." Katz, 672 F.3d at 71.  Injury, of course,
requires "an invasion of a legally protected interest which is
(a) concrete and particularized; and (b) actual or imminent, not
conjectural or hypothetical." Id. (quoting Defenders of
Wildlife, 504 U.S. at 560).

### a)  Injury

To prove injury for standing purposes at this stage of the
litigation, the plaintiffs must introduce evidence from which
the court can infer that they have suffered "an invasion of a
legally protected interest which is (a) concrete and
particularized; and (b) actual or imminent, not conjectural or
hypothetical." Id. (quoting Defenders of Wildlife, 504 U.S. at
560).  In this context, the plaintiffs must introduce evidence
that they, themselves, have suffered some legally cognizable
injury that is concrete — that is, that "actually exists."
Hochendoner, 823 F.3d at 731.

### (1)  Plaintiffs with injuries (Arsenault, the Bedards, Chandler, Cote, Demond, House, Shelley)

The record with respect to the plaintiffs' injuries is,
admittedly, light.  Though the plaintiffs bear the burden of
demonstrating standing, Spokeo, 136 S. Ct. at 1547, with the
"manner and degree of evidence required" at the summary judgment
stage," Katz, 672 F.3d at 71, they have introduced no diagnoses,

no medical records, no doctors' statements, no experts' affidavits — in short, nothing more than their own statements concerning the existence of their injuries.  The court expected a stronger showing at this stage in the litigation — that is, on a motion for summary judgment that included an additional round of submissions ordered by the court[68] protected the plaintiffs' interests after their counsel struggled to make their case in an earlier round of briefing and oral argument.

　　At oral argument, the plaintiffs' counsel blamed his failure to introduce evidence of his clients' injury on the defendants, arguing that defense counsel declined to question his clients about their personal injury claims[69] and, further, objected when he attempted to do so.[70]  The defendants vigorously contest these allegations.[71]  Though the deposition records reflect an agreement among the parties to limit discovery into diminution of property values for the plaintiffs' property-based claims discussed supra Part III.A, nothing in the record reflects any agreement, or any effort by the defendants, to prevent the plaintiffs' counsel from producing discovery, or

---

[68] September 27, 2018 Procedural Order (doc. no. 68).

[69] Transcript (doc. no. 69) at 17-18.

[70] Id. at 18-20.

[71] See Defendants' Supp. Mem. (doc. no. 72) at 2-3 & nn. 6-7.

even asking his clients during deposition, about the nature and extent of their alleged personal injuries.

Nonetheless, most of the plaintiffs have satisfied this element of standing.  Though the only evidence they offer in support of their injuries are their own affidavits and deposition testimony, those suffice at this stage to establish the existence of an injury.  See Defenders of Wildlife, 504 U.S. at 561 ("In response to a summary judgment motion, . . . the plaintiff must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true.").

Several of the plaintiffs have developed cancer, including Arsenault,[72] Marion Bedard,[73] Chandler,[74] Stephanie Cote,[75]

---

[72] Arsenault has had four types of cancer: colon, prostate, kidney, and thyroid.  Plaintiffs' Ex. 85 (doc. no. 74-10); Defendants' Ex. 46 (doc. no. 51-10) ¶ 11.

[73] Bedard states that she "has been very sick," and she "suffer[s] from vertigo and . . . [is] in remission from lymphoma."  Plaintiffs' Ex. 83 (doc. no. 74-8) ¶ 3.

[74] Chandler's single-sentence statement, "I have cancer," is the sole reference in the record to any physical injury she has suffered.  Defendants' Ex. 105 (doc. no. 72-7) at 47.

[75] Nicole Cote brings claims on behalf of her late daughter, Stephanie Cote, who passed away in 2016 from Ewing's Sarcoma, a type of bone cancer.  Plaintiffs' Ex. 35 (doc. no. 73-10) ¶ 11.

Demond,[76] House,[77] and Shelley.[78]  A cancer diagnosis satisfied

the requirement of a concrete, particularized injury.

Others have introduced evidence of other, allegedly

diagnosed injuries.  Darren Bashaw has suffered from skin

irritation, bone rot, nerve damage, and arthritis.[79]  Armond

Bedard has "had two strokes."[80]  And Julie Bedard, "at a very

young age[,] was diagnosed with digestive issues, [lung] issues,

pleurisy, pneumonia, a very bad cough, lymph node on back of her

---

[76] Demond has "stage 4 brain cancer," has had "a brain surgery,"
and had "lung cancer."  Plaintiffs' Ex. 33 (doc. no. 73-8) ¶¶ 7-
8.

[77] House has had lung cancer.  Plaintiffs' Ex. 71 (doc. no. 73-
46) at 45.

[78] Shelley has been "diagnosed with," among other things, "lung
cancer."  Plaintiffs' Ex. 84 (doc. no. 74-9) ¶ 3.  To the extent
that Shelley attempts to pin his injury on the fact that
"possible family members," including his brother, have also been
diagnosed with cancer, id. ¶¶ 3, 17, such injuries do not
satisfy the actuality or particularity requirements.  See
Hochendoner, 823 F.3d at 731-32.

[79] Plaintiffs' Ex. 90 (doc. no. 74-13) at 35.  He also contends,
without any supporting evidence, unless these constitute part of
his "skin issues" and "bone rot," that he has suffered from
"cysts [and] back vertebrae . . . issues."  Plaintiffs' Supp.
Mem. (doc. no. 71) at 19.

[80] Plaintiffs' Ex. 92 (doc. no. 74-15) ¶ 3.  He also contends
that his "gallbladder was reportedly 'destroyed'" and
subsequently removed in 2018.  Plaintiffs' Supp. Mem. (doc.
no. 71) at 15.  But there is no evidence in the record, at all,
concerning his gallbladder.  And, absent some sort of diagnosis,
the court is hard-pressed to consider the fact that he has "been
very sick," "unstable/unbalanced," "passed out a couple of
times," Plaintiffs' Ex. 92 (doc. no. 74-15) ¶ 3, as cognizable
injuries.

neck, and rapidly cervical degenerating [sic]."[81]  She submitted
an affidavit outlining a lifetime of health issues.[82]

Though the plaintiffs could have presented a stronger
record, knowing as they did that they bear the burden of
demonstrating standing, based on reasonable inferences drawn in
their favor at this stage in the litigation, these plaintiffs
have demonstrated an injury for standing purposes.

### (2)  Plaintiffs without injuries (Symonds, Merrill, David Bashaw, and Short)

Symonds, Merrill, David Bashaw, and Short, on the other
hand, have not satisfied the injury requirement.  Symonds has
not alleged an injury; Merrill has not introduced evidence of
any injury she alleged; and Short and David Bashaw have not
introduced evidence of specific, cognizable injuries.

Symonds does not even so much as allege an injury[83] and his
affidavit — the only evidence in the record from which the court
could expect to glean any suggestion of his injury — identifies

---

[81] Plaintiffs' Supp. Mem. (doc. no. 71) at 16.  The plaintiffs
have supported these allegations with a declaration from Bedard
which, curiously, they failed to introduce into the record.  See
Defendants' Ex. 41 (doc. no. 51-5) at PLAINTIFFS57-59.

[82] See id.

[83] See Plaintiffs' Obj. (doc. no. 60-1) at 24-25; Plaintiffs'
Supp. Mem. (doc. no. 71) at 19-20.

none.[84]  He does state, in his affidavit, that his "wife
developed cancer in July 2012 and passed away in 2014."[85]  He has
not, however, purported to bring this action on behalf of her
estate.  Nothing in the complaint or the plaintiffs' briefing
suggests as much.  And injury to his wife does not constitute
injury to Symonds for standing purposes.  Rather, "the party
asserting standing must not only allege injurious conduct
attributable to the defendant but also must allege that he,
himself, is among the persons injured by that conduct."
Hochendoner, 823 F.3d at 731–32.  Symonds has not, therefore,
introduced evidence of a cognizable injury.

Merrill alleges that she "was diagnosed with a spot of
cancer on her esophagus in 2013."[86]  In a separate, "Preliminary
List of Damages," she represents instead that she has
"[b]reathing problems, asthma, allergies, [and] chronic
headaches."[87]  But no party has introduced any evidence
concerning any of these ailments.[88]  At the summary judgment

---

[84] Plaintiffs' Ex. 75 (doc. no. 73-50).

[85] Id. ¶¶ 7, 14.

[86] Plaintiffs' Supp. Mem. (doc. no. 71) at 21.

[87] Defendants' Ex. 100 (doc. no. 72-2) ¶ 11.

[88] As supporting evidence, the plaintiffs cite to "Ex. 56(a)."
Plaintiffs' Supp. Mem. (doc. no. 71) at 21.  But plaintiffs'
exhibit 56, which comprises Julie Bedard's deposition testimony,
contains no reference to Merrill's cancer.  See Plaintiffs' Ex.
56 (doc. no. 73-31).  Nor does defendants' exhibit 56, Shelley's

stage, "the plaintiff can no longer rest on . . . 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." Defenders of Wildlife, 504 U.S. at 561 (quoting Fed. R. Civ. P. 56(e)). Absent even an affidavit supporting her allegation of an injury, Merrill has not substantiated her injury for standing purposes.

In his affidavit, David Bashaw claims that he has "been very sick," has "had three throat surgeries and stomach issues."[89]  No evidence identifies what ailment required the throat surgeries, how he has been "very sick," or what "stomach issues" he suffers from.  To the extent that David Bashaw bases his personal-injury claims on "cancer and cancer related health problems,"[90] the record lacks any evidence at all that David

---

affidavit.  See Defendants' Ex. 56 (doc. no. 52).  And none of Merrill's deposition testimony or her affidavits contain any such reference.  See Plaintiffs' Exs. 61-65 (doc. nos. 73-35, 73-36, 73-37, 73-38, 73-39, 73-40); Defendants' Ex. 33 (doc. no. 50-17).  They do contain references to a skin rash, but the plaintiffs have not asserted that as an injury suffered by Merrill and caused by MTBE in this action and, even if they did, Merrill would still have failed to demonstrate general causation, as discussed infra Part III.B.1.b.3 n.110.

[89] Defendants' Ex. 30 (doc. no. 50-14) ¶ 4.

[90] Plaintiffs' Supp. Mem. (doc. no. 71) at 18.  He also alleges that his children have had cancer and have "collapsed for no known reason . . . ." Id.  Even were there evidence in the record to support the allegation that his children have had cancer, David Bashaw's standing, must turn on his own injury, not injuries to parties on whose behalf he has not brought

Bashaw has suffered from cancer or cancer-related health
problems.

Similarly, in his declaration, Short explains that he has
"been very sick,"[91] and has a "lump on [his] chest" and a "spot
on [his] left breast."[92]  But he has submitted no diagnoses, not
even in his own declaration or deposition testimony, nor any
more specific information about his "lump" and "spot."  Absent
any information about either of these items, which may be benign
as readily as malignant, the court is hard-pressed at the
summary-judgement stage, where Short bears the burden of
demonstrating an injury, to conclude that these vague statements
satisfy that requirement.

At this stage in the litigation, David Bashaw and Short are
obligated to "'set forth' by affidavit or other evidence
'specific facts,' which for purposes of the summary judgment

---

claims, such as his children.  See Hochendoner, 823 F.3d at 731-
32.

[91] Plaintiffs' Ex. 45 (doc. no. 73-20) ¶ 3.

[92] Id. ¶¶ 20, 25.  Short's reference in paragraph 20 to "[t]he
cancer that is predominate in West Swanzey, including my lump on
my chest," absent a diagnosis or any other information in the
record concerning or contextualizing his "lump," does not raise
a dispute of material fact.

Short also asserts that his father, mother, and dog have died of
cancer.  Plaintiffs' Supp. Mem. (doc. no. 71) at 9.  Short's
standing, like David Bashaw's, turns on his own injury, not
injuries suffered by others.  See Hochendoner, 823 F.3d at 731-
32.

motion will be taken to be true." *Defenders of Wildlife*, 504 U.S. at 561 (quoting Fed. R. Civ. P. 56(e)).  Their claims of throat surgeries, stomach issues, a spot, and a lump lack the requisite specificity; and David Bashaw's claims of cancer lack any evidence at all.  Absent such evidence, Short and David Bashaw have not satisfied the injury element of standing.

### b) Causation

The causation element of standing "requires the plaintiff to show a sufficiently direct causal connection between the challenged action and the identified harm.  Such a connection "cannot be overly attenuated." *Id.* (citations omitted).  As the parties agree, all three of the plaintiffs' common-law personal-injury claims (defective design, failure to warn, and negligence) also require them to prove that the defendants' actions injured the plaintiffs.[93]  For example, to prevail on "a defective design products liability claim, a plaintiff must prove," among others, the following elements:  "(1) the design of the product created a defective condition unreasonably dangerous to the user; . . . and (4) the condition caused injury to the user or the user's property." *Vautour v. Body Masters Sports Indus., Inc.,* 147 N.H. 150, 153–54 (2001).  Similarly, to

---

[93] See Plaintiffs' Supp. Mem. (doc. no. 71) at 1-3; Defendants' Supp. Mem. (doc. no. 72) at 7-9.

prevail on a claim for failure to warn, a plaintiff must demonstrate that the defendant inadequately warned him about the unreasonably dangerous condition of a product. LeBlanc v. Am. Honda Motor Co., 141 N.H. 579, 587 (1997). And, of course, "[i]t is axiomatic that in order to prove actionable negligence, a plaintiff must establish that the defendant owed a duty to the plaintiff, breached that duty, and that the breach proximately caused the claimed injury." Estate of Joshua T. v. State, 150 N.H. 405, 407 (2003).

A plaintiff in a personal-injury action of this variety generally must demonstrate two forms of causation: general and specific. "'General causation' exists when a substance is capable of causing a disease" and "'[s]pecific causation' exists when exposure to an agent caused a particular plaintiff's disease." Milward v. Acuity Specialty Prod. Grp., Inc., 639 F.3d 11, 13 (1st Cir. 2011) (quoting Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 28 cmts. c(3), c(4) (2010)). That is, "general causation" requires a showing that a substance — here, MTBE — has the capacity to cause the condition from which the plaintiff suffers, while "specific causation" requires a showing that the defendant's actions exposing the plaintiff to the substance can be said to have caused the condition.

While the plaintiffs at this stage need not conclusively prove either variety of causation, to overcome the defendants' summary judgment motions, there must be some evidence in the record from which the court may infer that (1) MTBE, in general, causes an injury alleged by each plaintiff and (2) exposure to MTBE released by the defendants caused each plaintiff's specific injury. Most of the plaintiffs fail to satisfy one or both of these requirements.

As an initial matter, the plaintiffs' affidavit from a general practitioner with no demonstrated knowledge does not suffice to prove causation, either general or specific. In that affidavit, Terry Bennett, a general practitioner, summarily concludes that the plaintiffs have been exposed to MTBE and that even "low doses of MTBE in the water . . . will result in health problems, including cancer and autism." Plaintiffs' Ex. 77 (doc. no. 74-2) ¶ 4. The court need not, and does not, credit this affidavit because it contains only conclusory assertions, without any basis, about the plaintiffs' exposure and the cause of their injuries. See Fed. R. Evid. 703, 705; Schubert, 148 F.3d at 29-31 (doctor's affidavit was "without foundation" where it did not "provide any factual basis" and merely "contain[ed] conclusory assertions concerning the cause of . . . injury.").

### (1) Specific causation (Darren Bashaw, the Bedards, Chandler)

Six of the plaintiffs who have demonstrated injury have also introduced evidence of specific causation — that is, that they were exposed to MTBE released by the defendants. As discussed <u>supra</u> Par III.A.3.a, Armond and Marion Bedard and Teresa Chandler have submitted evidence that MTBA was detected in the water from their homes. That suffices, at this stage, to demonstrate their exposure to MTBE.

The defendants argue that Chandler has not been exposed to MTBE because she stopped drinking water from her well in 2013 over a year before MTBE was detected in her water.[94] But at the summary judgment stage, the court draws reasonable inferences in favor of the non-moving party. Noviello, 398 F.3d at 82. Where the record includes no evidence to the contrary, the court may therefore infer that, even if Chandler was not drinking her water, she was exposed to it by other means while living on the affected property, such as through washing or bathing.

The defendants also argue that Julie Bedard and Darren Bashaw have not demonstrated exposure because neither of them lived on one of those properties at the time of detection. But evidence exists in the record from which the court can in fact

---

[94] Defendants' Supp. Mem. (doc. no. 72) at 47.

infer that each visited during the time period when MTBE was
detected.  Specifically, Darren Bashaw moved out of the home now
owned by his brother David in 2004, but visited approximately
one or twice a week thereafter.[95]  He may, therefore, have been
exposed to the water around the time of the positive test.  And
though Julie Bedard moved away from Armond and Marion Bedard's
home before 2000,[96] she returns to visit her parents from time to
time.[97]  And though she does not stay at their house[98] and drinks
bottled water when she visits,[99] it is not unreasonable to infer
that she bathes, washes her hands or otherwise is exposed to the
water on those visits.

### (2)  No specific causation (Arsenault, Cote, Demond, House, Shelley)

Five of the plaintiffs lack standing for failure to
introduce evidence from which the court can infer that exposure
to MTBE released by the defendants caused any alleged injury.
Specifically, there is no evidence in the record from which the

---

[95] See Defendants' Supp. Ex. 103 (doc. no. 72-5) at 9-10.

[96] Defendants' Mem. (doc. no. 49-1) ¶ 63.

[97] Defendants' Ex. 107 (doc. no. 72-9) at 25.

[98] Id.

[99] Defendants' Ex. 113 (doc. no. 72-15) at 77.

court can infer that Arsenault, Stephanie Cote, Demond, House, or Shelley was exposed to MTBE.

Demond, House, and Shelley have introduced no evidence from which the court can infer their exposure to MTBE. Specifically, as discussed <u>supra</u> Part III.A.2.a, MTBE has never been detected on any of their properties. They have not introduced any evidence that they were exposed to MTBE through some other source, such as the water in a home that did test positive. And, just as Demond and House cannot base property-damage claims on injuries allegedly suffered by another property owner, absent evidence of their presence on those other properties, positive tests on other properties fail to raise more than mere speculation that they have been exposed to MTBE.

Nor have Arsenault and Cote introduced evidence of their exposure. Both Arsenault and Cote have lived in the Pine Grove Mobile Home Park — Arsenault from 1980 to 1984 and 2000 to the present, and Cote from 2010 to 2014.[100] Cote's late daughter, on whose behalf Cote brings this claim, was born during that time, and lived there with Cote until 2014.[101]

---

[100] Defendants' Mem. (doc. no. 49-1) ¶¶ 70, 78, 82.

[101] <u>See</u> <u>id.</u> ¶¶ 82, 84.

As discussed <u>supra</u> Part III.A.2.b, Pine Grove has a
community water system.[102]  No MTBE has been detected in that
community water system during the time that Arsenault or Cote
lived there.[103]  Though trace amounts of MTBE were detected in
monitoring wells, the record contains no evidence on which the
court can rely at summary judgment that either Arsenault or
Stephanie Cote were exposed to the water tested by those
wells.[104]  The monitoring wells nearest to Arsenault's and
Cotes's property never tested positive for MTBE[105] and, even if
they had, those wells did not supply water to their homes.[106]
Accordingly, there is no evidence that Arsenault or Cote has

---

[102] <u>Id.</u> ¶¶ 71.  In their memorandum, the plaintiffs suggest that
Cote's property had its own well.  <u>See</u> Plaintiffs' Supp. Mem.
(doc. no. 71) at 10.  The deposition testimony on which that
assertion is based, however, clearly refers to the source of the
Pine Grove water supply, not an independent well associated with
Cote's property.  <u>See</u> Plaintiffs' Exs. 36-38 (doc. nos. 73-11,
73-12, 73-13).

[103] Defendants' Mem. (doc. no. 49-1) ¶ 76; Crosby Aff't (doc.
no. 54) ¶ 7 (no MTBE detected between March 12, 1999 and May 23,
2016).

[104] As discussed <u>supra</u> Part III.A.2.b, the court cannot rely on
Moyer's unsworn, undated affidavit for this purpose.  <u>See</u>
<u>Cordero-Soto</u>, 418 F.3d at 120; Fed. R. Civ. P. 56(c)(4).

[105] <u>See</u> Plaintiffs' Ex. 46 (doc. no. 73-21) (map of Pine Grove,
showing Arsenault's property at lot number 3 and Cote's at lot
number 121); Plaintiffs' Ex. 48 (doc. no. 73-23) (showing
location of monitoring wells); Plaintiffs' Ex. 72 (doc. no. 73-
47) at 24 (no positive results for monitoring wells 7 and 11).

[106] <u>See</u> Defendants' Mem. (doc. no. 49-1) ¶ 77.

been exposed to MTBE, and thus no evidence of a causal connection between its release and their injury.

### (3)  General causation

Only Darren Bashaw, Armond Bedard, Marion Bedard, Julie Bedard, and Chandler have introduced evidence of both injury and specific causation.  Of these remaining plaintiffs, only Marion Bedard and Chandler have also demonstrated general causation — that is, only these two plaintiffs have introduced any evidence that MTBE is known to cause the specific injury (cancer) she has allegedly sustained.

Both Marion Bedard and Chandler have submitted affidavits affirming that they both have developed cancer.[107]  Evidence in the record connects MTBE exposure to cancer.  For example, the New Hampshire Department of Environmental Services notice that the Bedards received in 2011 explained that MTBE "is a potential human carcinogen . . . ."[108]  The "fact sheet" accompanying that notice further acknowledges the potential for MTBE to cause cancer.[109]  Thus, Bedard and Chandler have offered evidence of an injury causally connected to the defendants' actions and,

---

[107] Plaintiffs' Ex. 83 (doc. no. 74-8) ¶ 3 (Bedard); Defendants' Ex. 105 (doc. no. 72-7) at 47 (Chandler).

[108] Defendants' Ex. 15 (doc. no. 49-21).

[109] Defendants' Mem. (doc. no. 49-1) ¶¶ 46-47; Defendants' Ex. 8 (doc. no. 49-14) at PLAINTIFFS834-35.

accordingly, have standing to bring their personal-injury claims.

Darren Bashaw, Armond Bedard, and Julie Bedard have not met this requirement. The plaintiffs point to no admissible evidence in the record suggesting that MTBE exposure causes skin irritation,[110] bone rot, nerve damage, or arthritis as pleaded by Darren Bashaw. Nor does any evidence demonstrate that MTBE exposure causes strokes, or Armond Bedard's other vaguely described ailments. Similarly, the plaintiffs point to no evidence in the record suggesting that the MTBE causes any of the ailments of which Julie Bedard complains. These plaintiffs, therefore, have failed to introduce evidence from which the court can infer that the defendants' actions caused their alleged injuries.[111]

---

[110] The only evidence in the record that MTBE causes skin problems appears in Darren Bashaw's affidavit, Plaintiffs' Ex. 43 at PLAINTIFFS212 (doc. no. 73-18) ¶ 2 ("I only heard it could cause skin issues, rashes, and irritation. I heard this from my brother David."), and Demond's affidavit, Plaintiffs' Ex. 33 (doc. no. 73-8) ¶ 24 ("I am told that MTBE can cause skin problems."). Both of their statements are hearsay, which is not admissible at summary judgment. See Fed. R. Evid. 801(c); Federal Rule of Civil Procedure 56(c)(4); Dávila, 498 F.3d at 17.

[111] The court concluded, supra Part III.B.1.a.2, that Short and David Bashaw have not introduced evidence of cognizable injuries. Even if they had, their claims would end at this stage as well. No evidence in the record suggests that MTBE exposure causes throat surgeries (in and of themselves), "stomach issues," or undiagnosed "lumps" or "spots."

## 2.    Statute of limitations

The defendants argue that New Hampshire's three-year statute of limitations bars the personal-injury claims of all of the plaintiffs who received notice of MTBE contamination in 2011.  See N.H. Rev. Stat. Ann. § 508:4.  Of those plaintiffs, only Marion Bedard and Teresa Chandler appear to have standing to bring those claims.  The statute of limitations bars Marion's and, even if Armond Bedard and David Bashaw had standing, it would bar their claims as well.

Because those plaintiffs received notice of MTBE contamination in 2011, more than three years before the complaint was filed in April 2016, the plaintiffs have the burden of demonstrating that the discovery rule salvages their claims.  Feddersen, 427 F.3d 112 (quoting Furbush, 149 N.H. at 430).  To carry that burden, they must demonstrate that their claims accrued no more than three years before the complaint was filed.  See Gagnon v. G.D. Searle & Co., 889 F.2d 340, 342 (1st Cir. 1989) (applying New Hampshire law).  Personal-injury claims accrue when "the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendants' conduct."  Id.  Thus, the plaintiffs here must demonstrate that they were aware (or reasonably should have been aware) of some injury that may have been caused by MTBE no

earlier than April 11, 2013.  None of these plaintiffs have carried that burden.

Marion Bedard also has not met this burden.  Her personal-injury claims accrued upon her diagnosis in 2011.[112]  And she received notice, also in 2011, that her water tested positive for MTBE and that MTBE is a possible human carcinogen.[113]  Thus, as of 2011, Marion Bedard knew of her injury and was on notice that her "injury may have been caused by the defendants' conduct."  Gagnon, 889 F.2d at 342.

Even assuming that David Bashaw had standing, he admits that "[t]he record does not reflect the exact dates of when [his] injuries occurred."[114]  The record likewise contains no evidence of when Armond Bedard's ailments occurred or were diagnosed.  Absent such evidence, they cannot demonstrate that their claims accrued less than three years before the complaint was filed.  As they carry the burden of coming forward with such evidence, no genuine factual dispute exists here.

The defendants have included "Barred by Statute of Limitations" in their heading addressing Chandler's personal-

---

[112] Plaintiffs' Supp. Mem. (doc. no. 71) at 14 (Bedard "was not diagnosed with cancer until 2011"); Plaintiffs' Ex. 83 (doc. no. 74-8 ("The cancer that I have did not get diagnosed until 2011 . . . .").

[113] Defendants' Ex. 15 (doc. no. 49-21).

[114] Plaintiffs' Supp. Mem. (doc. no. 71) at 18.

injury claims.[115]  This appears to be a mistake, as they do not develop that argument nor include it in their summary chart.[116]  In any event, Chandler's personal-injury claims accrued no later than the date of the notice in 2014 that her water tested positive for MTBE, which occurred less than three years before the complaint was filed.  The statute of limitations therefore does not bar her claims.

### C.    Consumer Protection Act claims (Count VII)

Finally, the plaintiffs allege that the defendants violated New Hampshire's Consumer Protection Act.  That statute renders it "unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." N.H. Rev. Stat. Ann. § 358-A:2.  It enumerates a series of actions expressly prohibited.  Id. § 358-A:2 ("Such unfair method of competition or unfair or deceptive act or practice shall include, but is not limited to, the following . . . .").  But other actions not expressly prohibited may run afoul of the Act's general prohibition if "the objectionable conduct . . . attain[s] a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of

---

[115] Defendants' Supp. Mem. (doc. no. 72) at 47.

[116] See id.; Defendants' Supp. Reply App'x A (doc. no. 75-1).

commerce." *Fat Bullies Farm, LLC v. Devenport*, 170 N.H. 17, 24 (2017) (quotations and citations omitted).

The Act exempts from its provisions, among other things, "[t]ransactions entered into more than 3 years prior to the time the plaintiff knew, or reasonably should have known, of the conduct alleged to be in violation of this chapter . . . ." N.H. Rev. Stat. Ann. § 358-A:3, IV-a. "To determine whether a claim is exempt from the CPA, [the court] look[s] back from the time that the plaintiffs 'knew or reasonably should have known' of the alleged violation. If the transaction at issue occurred more than three years before that time, then it is exempt." *Murray v. McNamara*, 167 N.H. 474, 478 (2015). The defendants, as the party claiming the exemption, bear the burden of proving it. Id.; N.H. Rev. Stat. Ann. § 358-A:3, V.

They have done so here. The plaintiffs allege that the defendants engaged in actions that violate the Consumer Protection Act "in connection with their design, testing, manufacture, promotion, marketing and supply of gasoline containing MTBE." The plaintiffs contend that none of them were aware of those actions prior to April 2013. There is no dispute, however, that New Hampshire banned MTBE in 2007 or that the defendants' actions alleged to violate the Consumer Protection Act all occurred before 2007. Thus, even crediting the plaintiffs' representations concerning when they knew of the

alleged violation,[117] those allegedly actionable activities occurred more than three years prior to the plaintiffs' knowledge, and are thus exempted from the Act.  The defendants are, therefore, entitled to summary judgment on the plaintiffs' Consumer Protection Act claim as well.

## IV.  **Conclusion**

All but one of the plaintiffs have failed to carry their burden at this summary judgment stage of demonstrating, through admissible evidence — not mere allegations or unsigned statements — that they have standing to bring their claims and that the discovery rule prevents the statute of limitations from time-barring those claims.  They have failed to do so despite the court affording them a period of discovery to produce such evidence and an opportunity to supplement the record and their briefing.

Accordingly, for the reasons set forth above, the court GRANTS-IN-PART and DENIES-IN-PART the defendants' motion for summary judgment.[118]  Specifically, the court grants the defendants' motion with respect to both the property-based and

---

[117] See generally Plaintiffs' Supp. Mem. (doc. no. 71).  As discussed supra Part III.A.3, despite those representations, the undisputed facts in the record reflect that several of the plaintiffs were aware of MTBA contamination of their property caused by the defendants' actions before 2013.

[118] Document no. 49.

personal-injury claims of all plaintiffs _except_ Teresa Chandler, and denies it with respect to Chandler's property-based and personal-injury claims.  The court grants the defendants' motion with respect to all plaintiffs' Consumer Protection Act claims.

The court also GRANTS the defendants' unopposed motion to dismiss plaintiff Robert LaClair's claims.[119]


**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: March 29, 2019

cc:  Peter G. McGrath, Esq.
     Lisa S. Meyer, Esq.
     Nathan P. Eimer, Esq.
     Pamela R. Hanebutt, Esq.
     Owen R. Graham, Esq.
     Robert C. Dewhirst, Esq.
     Shelly Geppert, Esq.
     Peter W. Mosseau, Esq.
     Steve J. Bonnette, Esq.
     Stephen H. Roberts, Esq.
     Deborah E. Barnard, Esq.
     Jessica R. Early, Esq.

---

[119] Document no. 48.